392 So.2d 905 (1981)
STATE of Florida, Petitioner,
v.
Reinaldo Demetrio MENESES, Respondent.
No. 57506.
Supreme Court of Florida.
January 8, 1981.
Jim Smith, Atty. Gen., Tallahassee and Anthony C. Musto, Asst. Atty. Gen., Miami, for petitioner.
No appearance for respondent.
ALDERMAN, Justice.
We have for review the decision of the District Court of Appeal, Third District in Meneses v. State, 372 So.2d 1152 (Fla. 3d DCA 1979), which conflicts directly with Brooks v. State, 209 So.2d 271 (Fla. 1st DCA 1968). The question presented for our resolution is whether the pendency of a petition for writ of certiorari in this Court, arising from the affirmance on direct appeal of the judgment and sentence, deprives the trial court of jurisdiction to consider a Florida Rule of Criminal Procedure 3.850 motion to vacate filed after the certiorari petition has been filed in this Court. We hold that the trial court was deprived of jurisdiction to rule on Meneses' motion to vacate while certiorari proceedings were pending before us, approve Brooks, and quash the decision of the district court in Meneses.
On January 31, 1977, Meneses pled nolo contendere to a lottery-bolita violation reserving the right to appeal denial of his motion to suppress after the trial court denied his motion to suppress the primary evidence against him  wiretap evidence of telephone conversations. During the plea proceeding, the assistant state attorney represented to the court that a voice gram had been done and that the voice print compared by public safety department expert Earl Richardson verified the fact that Meneses' voice was heard on these calls. Meneses was sentenced on March 15, 1977, to two years in the state prison. The District Court of Appeal, Third District, affirmed his conviction and sentence, and Meneses sought certiorari to this Court. While his certiorari petition was pending and without securing leave of this Court to do so, Meneses filed a 3.850 motion in the trial court to vacate his judgment and sentence and to dismiss the information against him, or in the alternative to allow him to withdraw his nolo plea and to proceed to trial. He alleged that the prosecutor had made an untrue statement during the plea proceeding relative to the verification of Meneses' voice as being a voice heard on these wiretapped calls. He alleged that in fact at the time he had entered his plea, there had been no identification of his voice and further stated that *906 nine days after he entered his plea of nolo contendere, a voice identification report was sent by Earl Richardson to the assistant state attorney assigned to Meneses' case advising her that he could not positively identify the voice on the tapes submitted to him as Meneses'. The motion also alleged that this report was never furnished to Meneses or his counsel, that the assistant state attorney failed to furnish Richardson's report to the court which, at the time, was conducting a presentence investigation, and that the court, at the time it entered sentence, had no knowledge of the voice gram report because of deliberate suppression by the State. Finding that the allegations contained in the motion did not constitute legal grounds for granting a new trial or release of Meneses, the trial court denied the motion to vacate without hearing.
Meneses appealed, and the district court reversed and held that the trial court did not lack subject matter jurisdiction to consider the motion because of pendency of certiorari proceedings in the Supreme Court although the district court did recognize that a 3.850 motion may not be considered while the judgment from which relief is sought is on direct appeal in the district court of appeal. The district court remanded to the trial court for an evidentiary hearing to determine whether there had been a Brady violation.
Explaining the difficulty in allowing motions to vacate to be filed while certiorari review or appeal is pending from the conviction. Judge Hubbart dissented and expressed the view that the trial court lacked jurisdiction to entertain Meneses' motion to vacate. He asserted that the trial court was correct in summarily denying Meneses' motion to vacate for lack of jurisdiction, and he explained:
The orderly administration of justice requires, it seems to me, that the defendant pursue in one court at a time whatever legal remedies he desires to employ in attacking his criminal conviction. While pursuing his appellate remedies, the defendant ought not be allowed to simultaneously seek collateral attack relief in the trial court. Unnecessary confusion and needless expenditure of judicial time and effort are avoided by such a rule. Until today, I had thought that such was the prevailing law on the subject. Now it appears that Brooks v. State, 209 So.2d 271 (Fla. 1st DCA 1968), is no longer good law, and Barton v. State, 193 So.2d 627 (Fla. 2d DCA 1966); Gobie v. State, 188 So.2d 34 (Fla. 3d DCA 1966); and Grizzell v. State, 187 So.2d 342 (Fla. 1st DCA 1966), are in serious doubt. I am not persuaded that we should turn an about face on such decisions in favor of a practice which is dubious at best, and, in all likelihood, will lead to considerable confusion and waste of judicial resources.
By the court's decision herein, a busy trial judge is required to hold an evidentiary hearing on a motion to vacate, which, if denied, will be a complete waste of time and effort should the Florida Supreme Court later grant certiorari in the cause, quash our decision and reverse the defendant's conviction. On the other hand, if the trial judge grants the motion to vacate, the Florida Supreme Court will, in effect, be ousted of jurisdiction to further entertain the defendant's petition for certiorari, an anomaly in itself, after expending, and thus wasting, its judicial labor thereon.
To further complicate the matter, it should be noted that (a) either party may appeal an unfavorable ruling by the trial court on the motion to vacate, and (b) successive motions to vacate may be filed and appeals taken from rulings thereon so long as new grounds are raised in each motion. See Whitney v. State, 184 So.2d 207, 209 (Fla. 3d DCA 1966); 9A Fla.Jur. "Criminal Law" § 540 (1972). By requiring the trial court to entertain such motions and the appellate courts to review rulings thereon regardless of the status of other appellate remedies being simultaneously pursued by the defendant, a practice has been adopted which is likely to lead to the proliferation of a single criminal case in various courts resulting in considerable confusion as to the status of each remedy as well as needless expenditure *907 of judicial time and effort on remedies later mooted at both the trial and appellate levels. Even if this is workable, which I doubt, I see nothing to commend such an unnecessarily complex practice particularly at a time when the state's judicial resources are already strained by ever increasing caseloads. See England, "1979 Report on the Florida Judiciary," 53 Fla.Bar.J. 296-305 (1979).
Meneses v. State, 372 So.2d at 1155.
We agree with this rationale of Judge Hubbart, and we approve those decisions, some of which are cited above in the excerpt from Judge Hubbart's dissenting opinion, which hold that while appeal proceedings or certiorari proceedings are pending in an appellate court, the trial court is without jurisdiction to entertain a motion to vacate. The trial court's denial of the motion to vacate in the present case was therefore proper.
Our holding, however, does not preclude defendant's seeking an order from the appellate court to temporarily relinquish jurisdiction to the trial court for the purpose of filing and being heard on a motion to vacate prior to the appellate court's disposition of the case. This is the practice now utilized in the appellate courts in this state. See e.g., Jacobs v. State, 357 So.2d 169 (Fla. 1978). The filing in the appellate court of a request to relinquish jurisdiction, however, does not require an appellate court to automatically relinquish jurisdiction to the trial court. The proceedings in the appellate court may be nearing conclusion, and therefore the appellate court may not wish to relinquish jurisdiction at the time of the request but it might prefer to proceed with the disposition of the cause. This is within the discretion of the appellate court to decide. Further, the appellate court, before relinquishing jurisdiction, may evaluate the grounds for the motion to vacate to determine whether they are frivolous and may decide not to relinquish on this basis. This denial of the request to relinquish, however, is not a ruling on the merits of the motion to vacate and will not prevent a subsequent filing of a motion to vacate with the trial court at the conclusion of the proceedings in the appellate court.
Accordingly, we hold that during the pendency of a certiorari proceeding before us, the trial court is without jurisdiction to rule on a motion to vacate filed after review is sought in this Court. The decision of the district court is quashed, and this cause is remanded for further proceedings consistent herewith.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
ENGLAND, J., dissents with an opinion with which SUNDBERG, C.J., and ADKINS, J., concur.
ENGLAND, Justice, dissenting.
Despite the seeming force of logic in Justice Alderman's opinion and Judge Hubbart's dissent below, I find more compelling the analysis and reasoning of Judge Schwartz in his majority opinion below. Consequently, I respectfully dissent.
The problem which this case presents, it seems to me, must logically be broken into two distinctive parts; the first a question of judicial power, and the second a question of judicial administration. The majority here deals only with the second.
Judge Schwartz notes in the majority opinion below that, before Meneses sought discretionary review by way of certiorari in this Court, the Third District Court of Appeal had not only affirmed Meneses' judgment and sentence but had issued its mandate to the circuit court. That important fact, which underpins the circuit court's subject matter jurisdiction (or judicial power to proceed), seems to have been totally ignored by my colleagues.
Being under a mandate to carry out the original sentence of two years imprisonment, the circuit judge would have been derelict had he not acted promptly to effect Meneses' incarceration. It follows that if Meneses had a valid collateral attack on his sentence or conviction, he would certainly want to present it to the trial judge before *908 entering the jailhouse. Clearly, the circuit court had the subject matter jurisdiction, or the legal power, to entertain Meneses' claim before a request for review was filed in this Court.
My colleagues are concerned with the efficiency of the court system in dealing with situations where the request for the exercise of our discretionary review of a district court decision is lodged either before or simultaneously with the filing of documents presenting a collateral attack to the trial court. The question in those situations would be whether the filing with us ousts or forestalls what would otherwise be a proper invocation of the trial court's jurisdiction. I do not think the trial court's judicial power is either ousted or forestalled in those cases, and I find nothing in Brooks v. State, 209 So.2d 271 (Fla. 1st DCA 1971), to persuade me to the contrary.
First, it is essential to keep in perspective the nature of the relief requested of this Court in those situations, for it must be remembered that there is no right of review from the affirmance of a conviction by the district court.[1] Second, it must be remembered that a stay of the district court's mandate may be requested through procedures available under the appellate rules.[2] With these predicates in mind, it seems to me indisputable that there is no basis on which to suggest that the trial judge would lack the power or authority to incarcerate a person who simultaneously seeks or has sought discretionary review in this Court. If he has that power, it is self-evident that the efficaciousness of a valid claim for relief from an original conviction and sentence would be meaningless unless it can be asserted before the judge who is duty-bound to jail him.
As a matter of power, then, a trial judge surely has the authority not only to act on his instructions from the district court but to consider a proper request for relief from that directive. Judge Schwartz has noted that at no time in Florida's jurisprudence has the pendency of a discretionary review writ in the supreme court been deemed to oust the jurisdiction of a trial court to proceed in matters it is directed to undertake by a district court of appeal. Indeed, one is hard-pressed to understand the sense for appellate rules regarding stays if the mere filing of a petition for discretionary review in the supreme court prohibits the trial court from carrying out a direct order from a higher court.
The problem of concern to my colleagues is solely one of judicial administration, which they unfortunately discuss as if it were a matter of trial court jurisdiction. For administrative purposes, the majority suggests that collateral attack should await our exercise of discretion to accept or reject review of Meneses' petition for certiorari, or that a second, new request for discretionary action (to relinquish jurisdiction) should be filed with us as a predicate for trial court action. The first alternative is not very attractive, of course, for Meneses would be ill-served by awaiting the exercise of our discretionary decision in jail. The majority impliedly concedes as much by suggesting that Meneses should be allowed to ask us to relinquish jurisdiction to the trial court so that he can pursue a collateral attack.
An examination of the administrative processes preferred by the majority, I suggest, reveals more misdirected judicial effort than the alternative of allowing the trial court to act. A request to us to relinquish jurisdiction will plunge this Court into an evaluation of the legal basis for the claim of post conviction relief, though we have no record on which to make a judgment other than those selected portions of the record which may be supplied with the motion or response, at a time when we will not have yet decided whether we have either a basis or an interest in reviewing the original conviction and sentence. That, I *909 submit, results in very poor judicial resource allocation.
For one thing, we are ill-equipped to evaluate a request for post conviction relief; certainly we lack the resources of a trial judge to resolve factual disputes. Second, I fail to see any advantage in diverting this Court's attention from its normal business, as assigned by the constitution, to a relinquishment request which requires an evaluation of the legal basis for establishing the impropriety of an impending incarceration. This is unpalatable not only because at least five justices must review the request, but as well because the relinquishment request would always be a pressing issue, commanding the Court's immediate attention and perverting our own priorities for the allocation of our time.
For better judicial administration, I prefer the abatement of the discretionary review proceeding in this Court pending the trial court's determination of the defendant's right to be freed from incarceration. If a criminal defendant facing incarceration believes that his conviction and sentence are improper for reasons which support a collateral attack, I would allow him to pursue that remedy at any time in the trial court, and to have a determination of his claim finally resolved even if an evidentiary hearing and an appeal are necessary. I see no disadvantage to the judicial system, or to any party, in allowing the defendant an expeditious route of relief from an illegal sentence.
To avoid the concerns expressed by my colleagues, I would afford a simple solution. I would impose a duty on the defendant (and allow the state to act if the duty were not performed) to file with this Court a copy of the motion for collateral attack which is filed in circuit court. I would then treat that filing as a basis for summary suspension of our consideration of the request for discretionary review. As a ministerial matter, the clerk of this Court would take the necessary steps when that document is filed to withdraw from active consideration by the justices the defendant's then pending request for discretionary review. By this means the convicted defendant, in effect, elects to pursue first his need for immediate relief, aware that his collateral attack will have the consequence of suspending any activity in this Court on his request for our review of the legal basis for his conviction and sentence. I see no reason why a defendant should not be allowed that election. To follow the process through, I would have us resume our consideration of the request for discretionary review of the original sentence and conviction, if then necessary, at the conclusion of the post conviction relief proceeding, or at the conclusion of the appeal if one is taken.
The process I propose not only limits a criminal defendant to the choice of one forum, the goal which Judge Hubbart and the majority seek, but it accommodates a prompt adjudication of any valid basis on which to set aside the original conviction and sentence. This, to me, better conserves the resources of the judicial system. Equally important, it also avoids the need to alter existing doctrines of judicial power on the basis of some undefined theory of ouster.
Having said that trial courts have both the power to consider requests for collateral attack pending a request for discretionary review of the original conviction and sentence here, and that judicial administration can best be served by allowing an immediate filing of that collateral attack in the trial court, I would add that I do not consider the same procedure appropriate once this Court has acted to grant discretionary review. Consequently, if an order granting review has been entered before collateral attack is launched in the trial court, the matter should be treated in a manner identical to those cases in which a direct appeal is pending before a district court of appeal when the trial court receives such a request.[3]
SUNDBERG, C.J., and ADKINS, J., concur.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const. (1972); Lake v. Lake, 103 So.2d 639 (Fla. 1958). A distinction must be drawn between a right of review and a right to request review. See Pressley v. Wainwright, 367 So.2d 222 (Fla. 1979) (England, C.J., dissenting).
[2] Fla.R.App.P. 9.310.
[3] Barton v. State, 193 So.2d 627 (Fla. 2d DCA 1966); Grizzell v. State, 187 So.2d 342 (Fla. 1st DCA 1966).