403 So.2d 418 (1981)
Robert Ike COMBS, Appellant,
v.
STATE of Florida, Appellee.
No. 59425.
Supreme Court of Florida.
July 30, 1981.
Rehearing Denied October 5, 1981.
*419 Jack O. Johnson, Public Defender, and David A. Davis, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., and James S. Purdy, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant, Robert Ike Combs, was convicted of murder in the first degree. The trial judge imposed the death sentence in accordance with the jury's advisory sentence recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1980). The appellant has asserted no trial errors in this appeal but contends the sentence of death was improperly imposed. We have reviewed the entire record and find the evidence is clearly sufficient to support the conviction. We further find the imposition of the death sentence for this robbery-execution slaying was appropriate.
The relevant facts presented at trial principally by a surviving victim, Robert Perry, are as follows:
On June 1, 1979, Robert Perry was paid approximately $100 for one week's work, which he placed in an envelope in his pocket. He and a friend, Darrell Sharpe, went to a bar in Bonita Springs to drink beer and shoot pool. About midnight they moved on to a second bar and drank some more beer. Sometime later, appellant Combs approached Perry, who knew Combs slightly, and asked him for a ride home. Perry was not leaving yet, but Combs said he would wait. About that time, Perry's girl friend, Gay Lynn Parks, drove up in her mother's car. After smoking some marijuana, Perry, Parks, and Sharpe decided to leave the bar. Combs came out of the bar as they were leaving and got inside Perry's van with Perry and Sharpe. Parks followed in her car. They drove to Sharpe's house where Sharpe left the group and Parks parked her car and climbed into the van with Perry and Combs.
As the three drove off, they began talking about a party and Combs said he knew where one was. Perry then took Combs to his house and then to a trailer where Combs bought a gram of cocaine for Parks and Perry. After testing the drug, Perry paid Combs $80 for it. Combs then told Perry about a shortcut to the party, and after traveling along some dirt roads, they pulled into a cleared area. The three climbed out of the van and walked into the woods about 30 or 40 yards. Combs, who was in the lead, stopped, turned and pointed a western-type revolver at Parks. Parks became angry, saying, "Oh, goddamn. I should have known better than this. What are you doing?" In response, Combs told them to lie down. They refused, and Parks continued cursing Combs, saying, "I ain't laying down, you motherfucker. What the hell do you think you're doing?" Combs insisted they lie down since they were dead anyway. Eventually, Parks and Perry sat down.
Combs demanded money and the cocaine, and Parks kept cursing him. Perry never did give Combs any money, but Parks took a small purse containing the cocaine from her pants and threw it several feet from Combs, saying, "Here, go find it motherfucker." Combs, angered by this, said he was going to shoot Perry first so Parks could see him die. Parks started to cry, she told Perry she loved him, Perry told Parks he loved her, and then Combs shot Parks in the head. (He eventually fired two other shots into her head. Any of the three could have caused death and either of two of them would have caused instant death.) Perry charged Combs after the first shot into Parks, but he was shot in the head and fell to the ground unconscious. He awakened *420 shortly and felt someone stuffing something into his pocket. (He later found the envelope but without the remaining money.) Perry played dead and in a few minutes heard the person move off into the bushes.
Perry crawled out of the woods to the van but did not attempt to get in. Instead he sat on the ground a few minutes, and soon the van drove away. Perry went to the nearest house and summoned help. The police arrived and, with the assistance of police dogs, Parks' dead body was found. At 7:45 that morning, the van was found about two miles from the murder scene and one-half mile from Combs' house.
Shortly after the van was found, the appellant, Combs, was arrested at his home and taken to the police station, where he was immediately identified by Perry. Combs and Perry knew each other, and there was no issue concerning identity. There was a search made of appellant's room and van. None of the items seized were critical in the conviction, and no motion to suppress was filed by the appellant.
The appellant testified in his own behalf and admitted being with the principal witness, Perry, and the victim, Parks, on the evening of the murder and further testified that they smoked marijuana and snorted cocaine together on that evening. The appellant denied taking Perry and Parks into the woods and committing this murder. The jury returned a verdict of guilty of first-degree murder.
At the sentencing hearing neither party presented additional testimonial evidence in aggravation or mitigation, but each side presented argument based upon the testimony presented in the cause. The jury returned a recommendation of death.
The judge imposed the death penalty, finding that "the murder of GAY LYNN PARKS ... was committed while the defendant was engaged in, or was attempting to engage in, another violent felony, to wit: The robbery of ROBERT PERRY." Further, "the murder of GAY LYNN PARKS ... was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification when according to his plan and design, the defendant lured the victim to her death in a remote, wooded located [sic]." Further, "[t]he capital felony was especially heinous and cruel in that the victim was defenseless, yet the defendant coldly and cruelly taunted the victim about her imminent death and proceeded to execute GAY LYNN PARKS despite her pleas and entreaties." The trial court determined that "the defendant, who is twenty years of age, had no significant history of prior criminal activity although he had previously pled guilty to third degree burglary and had been placed on probation for two years" and that "the defendant, throughout the day prior to the murder, had, by his own account, consumed alcoholic beverages and indulged in cocaine. However, the Court finds that despite indulgence in these substances, the defendant's capacity to appreciate the criminality of his conduct and to conform his conduct with the requirements of law had not been substantially impaired." The trial court concluded that "the aggravating circumstances substantially outweigh the mitigating circumstances and require the imposition of the death penalty."
The appellant contends on this appeal that the trial court erred in imposing the death sentence, asserting that: (a) the trial judge improperly retroactively applied the aggravating circumstance that the murder was committed in "a cold, calculated and premeditated manner without any pretense of moral or legal justification" as set forth in section 921.141(5)(i), Florida Statutes (1979), which became effective July 1, 1979, thirty days after the murder was committed; (b) the trial court improperly held the appellant's capacity to appreciate the criminality of his conduct could be considered in mitigation only if substantially impaired, as opposed to impaired to a lesser degree, by beer, marijuana, and cocaine; (c) the trial court was in error in finding the aggravating circumstance that this murder was heinous, atrocious, and cruel since, although it was tragic, it was not shockingly evil or outrageously vile; (d) the finding by the *421 trial court that the murder was committed in the course of a robbery and was cold, calculated, and premeditated amounted to an impermissible doubling up of aggravating factors, contrary to Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); (e) the finding of the trial court of both the aggravating circumstance of heinous, atrocious and cruel, and cold, calculated and premeditated constitutes two different names for the same aspect of the murder and therefore, in effect, is a doubling up; and (f) the trial court erred by limiting the jury consideration of mitigating factors. We find each of these contentions to be without merit, and only the first requires discussion.
We find no error in the application of section 921.141(5)(i), Florida Statutes, which became effective July 1, 1979, adding as an aggravating circumstance:
(i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
If the legislature had added an entirely new factor as an aggravating circumstance, then retroactive consideration would have violated the prohibition against ex post facto laws as set forth in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), and in State v. Williams, 397 So.2d 663 (Fla. 1981). However, the addition by the legislature of paragraph (i) to section 921.141(5), in fact only reiterates in part what is already present in the elements of premeditated murder, with which petitioner was charged and which the evidence clearly supports. Although consideration of aggravating factors must be limited to those set forth in the statute, Elledge v. State, 346 So.2d 998 (Fla. 1977); Purdy v. State, 343 So.2d 4 (Fla.), cert. denied, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977); the elements of the specific offense charged are and must be inherently part of the circumstances taken into consideration when imposing a sentence in a capital case as well as in other criminal cases. As Justice Adkins stated in State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974):
The aggravating circumstances ... actually define those crimes  when read in conjunction with Fla. Stat. §§ 782.04(1) [homicide statute] and 794.01(1) [former rape statute], F.S.A.  to which the death penalty is applicable in the absence of mitigating circumstances.
What, then, does paragraph (i) add to the statute? In our view, it adds the requirement that in order to consider the elements of a premeditated murder as an aggravating circumstance, the premeditation must have been "cold, calculated and ... without any pretense of moral or legal justification." Paragraph (i) in effect adds nothing new to the elements of the crimes for which petitioner stands convicted but rather adds limitations to those elements for use in aggravation, limitations which inure to the benefit of a defendant. In the instant case both felony murder and premeditated murder were charged and proven, and the evidence is overwhelming that the murder was "committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." The trial court's finding that aggravated circumstance (i) existed was proper.
With regard to the other aggravating circumstances expressly found to exist in this cause, we agree it was appropriate for the trial judge to find upon the record that this premeditated murder was committed while the appellant was engaged in a robbery and that this murder was heinous, atrocious, and cruel. The circumstances are factually very similar to the robbery-execution slaying of Sullivan v. State, 303 So.2d 632 (Fla. 1974) (Overton, J., concurring), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976), in which the death penalty was upheld. For the reasons expressed, we find that the imposition of the death sentence was appropriate in this cause.
Counsel for appellant, in his oral argument before this Court, stated that he did not address any trial errors but he may find it necessary to raise issues in later post-conviction *422 relief proceedings under Rule of Criminal Procedure 3.850 concerning whether trial counsel provided this appellant with reasonably effective assistance of counsel in the trial now here on review. Section 921.141(4) requires that the "judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court ... after certification by the sentencing court of the entire record... ." We construe that terminology to require a full record review for trial error and a determination of the sufficiency of the evidence, as well as the appropriateness of the imposition of the death sentence. If appellate counsel in a criminal proceeding honestly believes there is an issue of reasonably effective assistance of counsel in either the trial or the sentencing phase before the trial court, that issue should be immediately presented to the appellate court that has jurisdiction of the proceeding so that it may be resolved in an expeditious manner by remand to the trial court and avoid unnecessary and duplicitous proceedings.[1]State v. Meneses, 392 So.2d 905 (Fla. 1981). No trial court error has been presented to us, and from our review of the record we find none. We find the evidence is not only sufficient but overwhelming for the conviction of this appellant of first-degree murder.
We affirm the conviction and the sentence of death.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
SUNDBERG, C.J., concurs as to the conviction and dissents as to the sentence with an opinion, with which ENGLAND and McDONALD, JJ., concur.
SUNDBERG, Chief Justice, concurring in part and dissenting in part.
I concur in the affirmance of the conviction. I feel, however, that the retroactive application of section 921.141(5)(i), Florida Statutes (1979), violates the state and federal prohibitions against ex post facto laws. Therefore, I respectfully dissent from the affirmance of the sentence of death.
The trial court's use of section 921.141(5)(i) as an aggravating circumstance directly contravenes two recent decisions, Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), and State v. Williams, 397 So.2d 663 (Fla. 1981). Weaver sets forth the two elements which must be present in order for a law to be ex post facto: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."[1] In Williams, this Court relied on Weaver in formulating the following twofold test for determining whether a law was ex post facto: (1) does the law attach legal consequences to crimes committed before the law took effect, and (2) does the law affect the prisoners who committed those crimes in a disadvantageous fashion?[2] Under the facts in the present case, both these requirements are satisfied. The new law did attach legal consequences to crimes committed before the law took effect because an additional aggravating circumstance was considered which affected the determination of the sentence. The second requirement is met because the likelihood of receiving a death sentence is increased by the addition of the new subsection.[3] A finding of this additional aggravating circumstance could shift the balance toward death.
*423 Based on the fact that section 921.141(5)(i) was unconstitutionally applied to the defendant, the judge improperly considered a non-statutory aggravating circumstance. There were also two mitigating circumstances in this case, thus Elledge v. State, 346 So.2d 998 (Fla. 1977), requires that this case be remanded to the trial judge for resentencing.
ENGLAND and McDONALD, JJ., concur.
NOTES
[1] In an unreported order in Francis v. State (No. 50,127) dated June 20, 1978, we relinquished jurisdiction to permit appellant to file a motion pursuant to Florida Rule of Criminal Procedure 3.850, raising a claim of ineffective assistance of counsel. Appellant was subsequently adjudged not to have been accorded effective assistance of counsel and was granted a new trial. See also Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980), in which this Court remanded for testimony on an application for new trial based upon a relationship, between the state and a key trial witness, that was unknown to either side until the appeal was pending.
[1] 450 U.S. at 29, 101 S.Ct. at 964.
[2] At 665.
[3] I must confess that it is beyond my powers of comprehension to understand how the majority can seriously contend that the addition of subsection (i) as an aggravating circumstance "inure[s] to the benefit of a defendant."