438 So.2d 774 (1983)
Paul Beasley JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 61341.
Supreme Court of Florida.
August 25, 1983.
Rehearing Denied October 26, 1983.
*775 Jerry Hill, Public Defender and W.C. McLain, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen. and David T. Weisbrod, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Paul Johnson appeals his convictions of first-degree murder and sentences of death. We have jurisdiction[1] and affirm both the convictions and sentences.
A nine-count indictment charged Johnson with three counts of first-degree murder, two counts of robbery, kidnapping, arson, and two counts of attempted first-degree murder. The jury convicted Johnson of all counts as charged and recommended a sentence of death for each of the three first-degree murder convictions. The trial court imposed the recommended death sentences as well as lesser sentences on the remaining convictions.
The charges stemmed from the following facts. Late in the evening of January 8, 1981 William Evans, a taxicab driver, picked up a fare in Polk County. After midnight, the dispatcher heard a stranger's voice several times over the cab's radio. She never heard from the driver again, and five days later his cab and body were found in separate, isolated citrus groves. The cab had been set on fire, and the driver had *776 been shot twice in the head; his wallet and fare money were missing.
About 3:00 a.m. on January 9, 1981 Darrell Beasley and Amy Reid left a Lakeland restaurant. In the parking lot a man approached them, said his car would not run, and asked for a ride to a friend's house. In an isolated area the stranger asked Beasley to stop the car so that he could urinate. On returning to the car he asked Beasley to come to the rear of the car. Through the rear window, Reid saw the stranger holding a pistol on Beasley. She then locked the car doors and drove several miles to a store where she called the sheriff's department.
Deputies Allison and Darrington responded to Reid's call and drove her in their patrol car to where she had left the two men. In the meantime another deputy, Theron Burnham, radioed that he had seen a suspect on the road in question. On arriving in the area Allison and Darrington stopped their car facing Burnham's patrol car. A white male walked rapidly from a drainage ditch at the side of the road and crossed in front of the deputies' car. He fired two shots at the deputies and escaped across an open field. Allison and Darrington then found Burnham's body in the drainage ditch; he had been shot three times.
Later that day searchers found Beasley's body. He had been shot once in the head and his wallet was missing. The police arrested Johnson for these two homicides on January 10, 1981 and the following week charged him with the cab driver's murder.
As his first point on appeal, Johnson claims that a fellow inmate's testimony as to Johnson's admissions of guilt should have been suppressed under United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), and Malone v. State, 390 So.2d 338 (Fla. 1980), cert. denied, 450 U.S. 1034, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981), because the other inmate had become an agent of the state. The inmate, Smith, had worked as an informant for the sheriff's department several months prior to the incidents at issue here. After meeting Johnson by chance and having a casual conversation with him, Smith contacted the detective he had previously worked for and told him what Johnson had said. This detective contacted the two detectives working on Johnson's case, who also spoke with Smith. Smith was moved to several different cells and eventually wound up in one next to Johnson's cell. He took notes on his conversations with Johnson and turned them over to the detectives handling Johnson's case.
At the hearing on the suppression motion Smith and the three detectives testified that Smith talked to Johnson on his own initiative, without any prompting from the detectives. The detective that Smith originally contacted said that he had told Smith that it might be in Smith's best interest to write down what Johnson said. Smith, on the other hand, testified that he decided to take notes, solely on his own, because he had trouble remembering things. The other detectives stated that they had not told Smith to talk to Johnson or to take notes. Smith testified that he thought he had been moved to the isolation cell next to Johnson's because he had been injured and because he had had a bad argument with a counselor.
After hearing both sides' testimony, the court found Malone distinguishable from the instant case and denied the motion to suppress. A ruling on a motion to suppress is presumptively correct, and a reviewing court should interpret the evidence and reasonable inferences and deductions drawn from the evidence in a manner most favorable to sustaining the trial court ruling. McNamara v. State, 357 So.2d 410 (Fla. 1978). Here, the trial court held that the detectives did not direct Smith, either directly or surreptitiously, to talk with Johnson or to take notes on their conversations. Henry and Malone do not impose on the police an affirmative duty to tell an informer to stop talking and not approach them again nor do they require that informers be segregated from the rest of a jail's population. We agree with the trial court that this case presents a close question on whether Smith had become an agent of the state, but we find the ruling that he had not to be supported by the evidence.
*777 Amy Reid and Deputies Allison and Darrington identified Johnson from a lineup. On appeal Johnson attacks the lineup as having been impermissibly suggestive and claims the court erred in refusing to allow his expert to testify as to the unreliability of eyewitness identification. We find no error in these points.
The United States Supreme Court set out the standard for determining the reliability of an identification, on the totality of the circumstances, even though the procedure might have been suggestive in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The Court identified five factors relating to reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199, 93 S.Ct. at 382. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court reiterated that the reliability of the identification is the most important concern and that it should be determined on the totality of the circumstances. This Court adopted the Manson two-part test in Grant v. State, 390 So.2d 341 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981):
(1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification.
Id. at 343.
Johnson attacks the lineup because of its composition  only he had a suntan and blonde hair and his inmate uniform was a lighter blue than that of the other inmates in the lineup. Like the trial court, we do not find that the complained-of items made the lineup impermissibly suggestive. Moreover, we note that a sheriff's department investigator testified that none of the witnesses indicated at the lineup that these items influenced their identifications. Besides finding the lineup not to have been unnecessarily suggestive, we find that these witnesses' identifications conform to the five factors set out in Neil v. Biggers. We hold, therefore, that the trial court did not err in refusing to suppress these identifications.
Johnson attempted to call a professor of psychology as an expert witness in the field of eyewitness identification. According to Johnson, this witness would have explained both the common problems in such identifications and the general factors affecting a witness' accuracy as well as testifying about the suggestiveness of the instant lineup itself. A trial court has wide discretion concerning the admissibility of evidence and the range of subjects about which an expert can testify. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. Johnson. We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony.[2] We find no abuse of discretion in the trial court's refusal to allow this witness to testify about the reliability of eyewitness identification.
Relying on Hall v. State, 403 So.2d 1319 (Fla. 1981), Johnson claims that he should have been convicted of no more than *778 second-degree murder for the deputy's death. In that case Hall and his cohort struggled with a deputy sheriff over a pistol; the deputy was shot to death. On appeal we found the evidence insufficient to convict Hall of premeditated murder. Our reading of the instant record shows sufficient evidence of premeditation to support the conviction of first-degree murder in the deputy's death, and we find Hall inapplicable to the instant case because the evidence here is inconsistent with any reasonable hypothesis other than premeditated murder.
Johnson next claims that the trial court improperly excused a prospective juror for cause in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). After studying this prospective juror's responses to the questions asked on voir dire, we find that she unequivocally stated her opposition to imposing the death penalty. The trial court, therefore, properly excused her.
As his final challenge to the guilt-innocence phase of the trial, Johnson claims that the charges arising from the cab driver's death should have been severed from the remaining counts of the indictment. Florida Rule of Criminal Procedure 3.150(a) provides:
Two or more offenses which are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, whether felonies or misdemeanors, or both, are based on the same act or transaction or on two or more connected acts or transactions.
A severance should be granted when necessary to achieve a fair determination of a defendant's guilt or innocence. Fla.R. Crim.P. 3.152(a)(2). Granting a severance is largely a matter of discretion with a trial court, and the burden is on the movant to demonstrate an abuse of discretion. Manson v. State, 88 So.2d 272 (Fla. 1956); Ballard v. State, 323 So.2d 297 (Fla. 3d DCA 1975).
Johnson relies on Paul v. State, 385 So.2d 1371 (Fla. 1980), where this Court adopted Judge Smith's dissent to Paul v. State, 365 So.2d 1063 (Fla. 1st DCA 1979). We find Paul distinguishable from the instant case because there the offenses occurred five weeks apart. Here, on the other hand, only hours separated the three homicides and related crimes. We do not find that a severance would have been necessary to fairly determine Johnson's guilt or innocence in the crimes charged.
Several attacks on the sentences and sentencing phase of the trial comprise Johnson's last points on appeal. He claims that the trial court erred in its assessment of the aggravating factors and in instructing the jury on certain aggravating factors, that the standard jury instruction precludes consideration of mitigating evidence, and that the trial court should have allowed him to waive an aggravating circumstance. We find no merit to these contentions.
In a thoughtful and well-reasoned sentencing order the trial court found the following aggravating factors: previously convicted of a capital or violent felony (all three homicide charges); felony murder (all three); avoiding arrest (Burnham); pecuniary gain (Evans); and cold, calculated, premeditated manner (all three). The court found none of the statutory mitigating circumstances applicable, but did find Johnson to have been under the influence of drugs although not to the extent of being under extreme mental or emotional disturbance or extreme duress.
We find that the evidence supports the findings in the trial court order.
Johnson challenges several of these findings which we will discuss briefly. In finding that Johnson had previously been convicted of a violent felony the trial court relied on the convictions for attempted murder in this trial. This is a proper finding under King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981), and Lucas v. State, 376 So.2d 1149 (Fla. 1979). The evidence is also sufficient to support finding that Johnson killed the deputy while fleeing *779 from a robbery. The deputy was shot only one-half hour after Beasley and only a mile and a half from the site of his death. See Griffin v. State, 414 So.2d 1025 (Fla. 1982). There is also support for the court's finding the deputy's murder to have been in a cold, calculated, premeditated manner. We note that testimony showed that, prior to starting out for the evening, Johnson stated that he would not mind shooting people to obtain money and that the deputy was shot three times. Johnson claims that the court improperly doubled up the felony murder and pecuniary gain factors in the Evans murder, but three underlying felonies were present in that incident, i.e., robbery, arson, and kidnapping. The court, therefore, could properly find the factor of pecuniary gain. We also hold that the trial court properly found flight after commission of a robbery and for the purpose of avoiding arrest in aggravation of the deputy's murder. Evidence shows both that Johnson robbed Beasley, the second victim, and that the deputy stopped Johnson on the road as a possible suspect.
Johnson claims the court improperly instructed the jury on the aggravating factors of heinous, atrocious, and cruel and great risk of death to many people because the evidence presented would not support finding either of those circumstances. We find no error in the instructions. The list of statutory aggravating circumstances is exclusive, and we see no reason to notify a defendant of the circumstances on which the state will rely. Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). The state must prove applicable aggravating circumstances beyond a reasonable doubt. Williams v. State, 386 So.2d 538 (Fla. 1980). The trial court did not find either of these factors, and Johnson suffered no prejudice from the complained-of instructions.
The list of mitigating circumstances set out in section 921.141(6), Florida Statutes (1981), contains modifying terms such as "extreme," "significant," "relative," and "substantial." Johnson claims that these modifiers have the effect of improperly instructing the jury to disregard all mitigating evidence if the threshold defined by the limiting words is not met. As this Court has previously commented, the statutory mitigating circumstances,
when coupled with the jury's ability to consider other elements in mitigation, provide a defendant in Florida with every opportunity to prove his or her entitlement to a sentence less than death.
Peek v. State, 395 So.2d 492, 497 (Fla.), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Moreover, we note that the court granted Johnson's requested instruction on the unlimited nature of the mitigating circumstances. We find no merit to this claim.
Relying on Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981), and Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982), Johnson claims that the trial court should have allowed him to waive the applicability of the cold, calculated, and premeditated aggravating circumstance. In Combs we stated that subsection 921.141(5)(i) "adds limitations to those elements for use in aggravation, limitations which inure to the benefit of a defendant." 403 So.2d at 421. Mitigating circumstances inure to the benefit of a defendant and can be waived by a defendant.[3]Maggard. Johnson reasons, therefore, that a defendant should be able to waive the aggravating factor set out in paragraph (5)(i). This reasoning, however, misses the point of the pertinent discussion in Combs. The above-quoted statement in Combs is in response to the claim that all premeditated murders will automatically start with one aggravating factor. We adopted that language to allay that fear and find no merit to the instant claim.
*780 Finding no error, we affirm Johnson's convictions and sentences.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] Several other courts have reached the same conclusion about expert testimony in eyewitness identification: United States v. Thevis, 665 F.2d 616 (5th Cir.), cert. denied, ___ U.S. ___, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); United States v. Fosher, 590 F.2d 381 (1st Cir.1979); Caldwell v. State, 267 Ark. 1053, 594 S.W.2d 24 (App. 1980); People v. Dixon, 87 Ill. App.3d 814, 43 Ill.Dec. 252, 410 N.E.2d 252 (1980); State v. Helterbridle, 301 N.W.2d 545 (Minn. 1980); Nelson v. State, 362 So.2d 1017 (Fla. 3d DCA 1978).
[3] We note that the trial court allowed Johnson to waive a mitigating factor (no significant history of prior criminal activity) in the instant case.