572 So.2d 908 (1990)
Lawrence LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 73340.
Supreme Court of Florida.
November 29, 1990.
Rehearing Denied February 5, 1991.
*909 Edward M. Kay of Kay and Bogenschutz, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen. and Joan Fowler, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Lawrence Lewis appeals his conviction for first-degree murder and sentence of *910 death.[1] Our jurisdiction is mandatory. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and sentence.
At about 10 p.m. on May 11, 1987, the witness Mayberry was a passenger in a truck being driven by the victim, Gordon, who pulled off the highway because he believed that a tire had been thrown in front of his truck. As Gordon approached a jeep parked beside the highway, a man Mayberry later identified as appellant attacked him with a pipe. Gordon ran toward his truck, chased by appellant. As Gordon climbed into the rear of the truck, appellant got in beside Mayberry, who was now driving, and ordered him to stop or be killed. Mayberry refused, jumped out of the truck, and hid for two or three hours beside the highway, during which time he heard Gordon's truck go by several times. He never saw Gordon alive again.
Appellant appeared briefly at the home of witness Markum at approximately 11 p.m. on May 11, driving a truck she had never seen before, and reported that his jeep was disabled on the road. Markum testified that there was an injured man on the floor of the truck who was asking for water and said he was in pain. Appellant returned to Markum's between midnight and 2 a.m. on May 12. Markum overheard appellant tell her friend Ballard that appellant had left some guy on U.S. 27 and put the truck in a canal. Witness Hedden, after 12:30 a.m. on May 12, saw appellant driving a truck later identified as Gordon's, and saw a man on the floor who had a broken arm. Witness Rivera testified that when she, Ballard, and appellant went to retrieve appellant's jeep in the early morning hours of May 12, appellant told her he had killed someone.
On May 12, Gordon's truck was pulled from a canal on U.S. 27. On May 13, Gordon's body was found in the tall grass in the median of U.S. 27, across the road from where his truck had been found. The medical examiner testified the victim had five lacerations to the head, injuries to his left shoulder, a compound fracture to his left forearm, and various defensive wounds. The examiner opined that Gordon was alive when the wounds were inflicted and he died from blunt head trauma.
Appellant raises eight points on appeal. He contends that Mayberry's photo-lineup identification of him should have been suppressed because his photo was different from the other five in unduly suggestive ways: pose, background color, clothing and hair color of those pictured, and type of photo. This argument lacks merit. To compel exclusion of identification evidence, the identification must be impermissibly suggestive. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).[2] The photographs used in the lineup were made part of the record. We agree with the trial court's determination that there was nothing suggestive about this six-Polaroid-picture lineup of white males, with varying shades of brown or dark hair, in informal pose and clothing. That being the case, there is no merit to appellant's further assertion that Mayberry's in-court identification of appellant was tainted by the photo-lineup.
We also find no merit to appellant's assertion that Mayberry's in-court identification of appellant was tainted by the fact that he was placed in the same holding cell with appellant prior to trial.[3] Mayberry's identification was accompanied by the indicia of reliability enumerated in Brathwaite. Mayberry had the opportunity to view appellant beside him in the cab of the truck, poking him with a pipe and threatening him with death; his attention doubtless was riveted. No claim is made that appellant *911 lacks the physical characteristics described by Mayberry shortly after the incident. The photo-lineup identification was made within a month of the incident. The identification itself was almost instantaneous (made within three to five seconds of seeing the photos), and preceded the instances of being placed in the same holding cell. Under the totality of the circumstances, there was not a substantial likelihood of misidentification. Brathwaite, 432 U.S. at 114-15, 97 S.Ct. at 2253; Rose v. State, 472 So.2d 1155 (Fla. 1985).
Appellant asserts it was error to exclude a psychiatrist's opinion regarding the eyewitness-identification process, the effects of drugs on memory, and the unwarranted reliance of jurors on eyewitness testimony. In Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984), we held that exclusion of such testimony is not an abuse of discretion. We said, "a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." Id. at 777. The psychiatrist admitted he could not testify regarding the reliability of any specific witness, but could only offer general comments about how a witness arrives at his conclusions. We find no abuse of discretion here.
Appellant's third point relates to the admission of Mayberry's poem, recited from memory, chronicling his history of drug abuse. Noting that Mayberry's memory was an issue, the court found the recitation of the poem relevant to his ability to remember. Even if the court abused its discretion in admitting the recitation, the error was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Appellant argues that his statement upon arrest[4] should have been suppressed, because he was not immediately informed of the reason for his arrest. He asserts a violation of section 901.17, Florida Statutes (1987).[5] An arresting officer disputed appellant's assertion and testified that appellant was immediately informed of the cause of his arrest, and both sides agree appellant was informed within thirty minutes. Even assuming this later occasion was the first notice of the cause of arrest, there simply is no credible evidence that appellant's spontaneous statement was a direct result of a violation of section 901.17.[6] The trial judge was correct in his denial of appellant's motion to suppress the statement.
Appellant argues that the trial court erroneously instructed the jury on excusable homicide. At the charge conference, counsel objected to the use of the shortform instruction on excusable homicide contained in the Florida Standard Jury Instructions in Criminal Cases.[7] His argument was that as worded the instruction was confusing and susceptible to the interpretation *912 that there were no circumstances under which a killing is excusable when a dangerous weapon is used. See Kingery v. State, 523 So.2d 1199 (Fla. 1st DCA 1988); Bowes v. State, 500 So.2d 290 (Fla. 3d DCA 1986), review denied, 506 So.2d 1043 (Fla. 1987); Blitch v. State, 427 So.2d 785 (Fla. 2d DCA 1983). The trial judge suggested numbering the three circumstances under which excusable homicide can exist and eliminating the comma after the word "combat" in order to make clear that the requirement that a dangerous weapon not be used refers only to instances of sudden combat. Appellant's counsel maintained his objection, though he did not offer an alternative instruction. He also declined the judge's offer to give the long-form standard jury instruction on excusable homicide.
It is not entirely clear that the trial judge fully followed through with his intent to clarify the instruction. According to the trial transcript, the comma was eliminated, but there was no numbering of the different ways in which excusable homicide could occur. On the other hand, the written charge that was given to the jury differentiated the several instances of excusable homicide by number and clearly indicated that the requirement that a dangerous weapon not be used related only to instances of sudden combat.
Even if it be assumed that the instruction was confusing, any error was entirely harmless. The evidence did not support excusable homicide. Moreover, in closing argument neither the prosecutor nor the defense attorney ever suggested that the killing could have been excusable. The defense position was that the testimony of Mayberry and the other witnesses was not credible and that someone else had committed the crime.
As his seventh point, appellant argues that the standard jury charge in the penalty phase unconstitutionally shifted the burden of proof to require that appellant show that life was the appropriate penalty.[8] We previously have rejected this argument. Stewart v. State, 549 So.2d 171 (Fla. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990); Arango v. State, 411 So.2d 172 (Fla.), cert. denied, 457 U.S. 1140, 102 S.Ct. 2973, 73 L.Ed.2d 1360 (1982).
As his final point, appellant argues that the death penalty is inappropriate in this case. The trial court imposed the death penalty, in agreement with the jury's ten-to-two recommendation.[9] The court's findings are supported by the record and we find no error.
For the foregoing reasons, we affirm the conviction and sentence.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Appellant was also convicted of aggravated assault, aggravated battery, burglary of a conveyance while armed, robbery with a deadly weapon, and kidnapping with a deadly weapon. He does not challenge these convictions.
[2] We adopted Brathwaite in Grant v. State, 390 So.2d 341 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).
[3] Mayberry and appellant were in the same holding cell because they were both being held in jail prior to the suppression hearing and trial, not for any reason attributable to the prosecution. Moreover, there were about thirty people in the holding cell  appellant could have been any or none of these.
[4] "That was not a murder. That was more like a fight."
[5] Section 901.17 provides:

A peace officer making an arrest without a warrant shall inform the person to be arrested of his authority and the cause of arrest except when the person flees or forcibly resists before the officer has an opportunity to inform him or when giving the information will imperil the arrest.
[6] Officer Gill testified that appellant's statement came as a response to one of the questions on the Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] rights form: "Knowing and understanding your rights as I have explained them to you, are you willing to answer without an attorney present?" To this appellant replied, "I don't need an attorney. Tell me what I'm arrested for." When informed that he was arrested for the murder of Michael Gordon, he replied, "That was not a murder. That was more like a fight."
[7] In the introduction to homicide on page 61, the standard jury instructions contain the following definition of excusable homicide which is taken from section 782.03, Florida Statutes (1989):

The killing of a human being is excusable, and therefore lawful, when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or by accident or misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.
[8] The standard jury instruction was given in the penalty phase, as follows:

Now should you find sufficient aggravating circumstances do exist it will then be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances.
... .
... You should weigh the aggravating circumstances against the mitigating circumstances and your advisory sentence must be based on these considerations.
[9] The trial court found that appellant was previously convicted of crimes of violence (specifically robbery and kidnapping in 1985); the instant crime was committed in the course of a kidnapping; and the instant crime was wicked, evil, atrocious, or cruel. The court found no mitigating circumstances.