660 So.2d 340 (1995)
Scott E. McMULLEN, Appellant,
v.
STATE of Florida, Appellee.
No. 93-3582.
District Court of Appeal of Florida, Fourth District.
August 30, 1995.
Rehearing Denied October 3, 1995.
L. Martin Reeder, Jr., and Steven M. Marks of Steel, Hector & Davis, and Evelyn A. Ziegler, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
John F. Tierney, III, of Tierney & Haughwout, West Palm Beach, for amicus curiae-Florida Association of Criminal Defense Lawyers.
*341 PER CURIAM.
We affirm appellant's conviction and sentence. See Johnson v. State, 438 So.2d 774, 777 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); and Newton v. State, 603 So.2d 558, 560 (Fla. 4th DCA 1992).
The only real question which we believe warrants discussion is whether to certify a question of great public importance; and a majority of us believe that the supreme court should make the decision to accept or decline to do so.
Appellant was charged by a three count information for shooting into a dwelling, the aggravated assault (with a firearm) of Sheron Grewal, and the aggravated battery (with a firearm) of Mohinder Grewal, who, along with his wife Sheron, owned and operated a beer store.
On the night of the incidents, appellant allegedly approached Sheron Grewal outside of the store, while she was sweeping the parking lot. After grabbing her on the shoulder, he then tried to push her inside the store but, when she resisted, he brandished a gun and shoved it into her side.
Hearing noises outside, Mohinder Grewal, who was inside the store working the cash register, walked toward the doorway to look out, but as he approached the doorway he caught a glimpse of the assailant and was immediately shot. The assailant then turned, and fled away. Both Mohinder and Sheron later identified appellant as the assailant.
At trial, appellant attempted to call Dr. John Brigham, a professor of psychology, to testify about the psychological factors that affect the reliability of eyewitness identifications. According to Dr. Brigham, thousands of scientific studies indicate that psychological factors, which are supposedly unknown to the average person, can affect the accuracy of eyewitness identifications. In particular, Dr. Brigham said that he could testify about the following six issues at trial:
1. Eyewitness identifications are incorrect much more often than the average person thinks.
2. A witness's confidence or certainty in an identification is unrelated to the accuracy of the identification.
3. Cross-racial identifications are more difficult than same-race identifications.
4. "Unconscious transference" [i.e., it is easier for a person to remember a face than to remember the circumstances under which the person saw the face].
5. Accuracy of facial identifications decreases in stressful situations.
6. Accuracy of identification decreases as the interval between the event and the time when the witness attempts to retrieve the memory increases.
The state moved in limine to exclude Dr. Brigham's testimony, arguing that the nature of his comments did not require any special knowledge or experience that would assist the jurors in reaching their conclusions, and citing Johnson to support the motion.
The trial court granted the state's motion, reaching the following conclusion in the order which excluded Brigham's testimony:
This Court is of the opinion that the facts testified to by Dr. Brigham are not of such a nature as to require special knowledge in order for a jury to reach a decision. In Johnson v. State, 438 So.2d 774 (Fla. 1983), the Florida Supreme Court in affirming the trial court's refusal to allow the testimony of an expert witness in the field of eyewitness identification, held:
"... [A] jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony."
Thereupon it is
ORDERED and ADJUDGED that the State's Motion in Limine to Exclude Defense Expert on Eyewitness Identification is granted.
(Emphasis added).
Without hearing Brigham's testimony, the jury found appellant guilty of the three offenses charged in the information.
Since Johnson controls the trial court and this court, there is no question in our mind that the trial court ruled correctly on the *342 motion in limine and for the right reason. Nevertheless, we certify as a question of great public importance the following question:
WHEN THE SOLE ISSUE IN A CRIMINAL PROSECUTION IS ONE OF IDENTITY AND THE SOLE INCRIMINATING EVIDENCE IS EYEWITNESS TESTIMONY, SHOULD THE COURT ADMIT EXPERT TESTIMONY UPON THE FACTORS THAT AFFECT THE RELIABILITY OF EYEWITNESS IDENTIFICATION.
While the majority is aware that the supreme court categorically rejected such testimony in Johnson, which was decided in 1983, the court may want appellant's counsel, and amicus curiae if permitted, to present the current studies and decisions of other jurisdictions, which over the last twelve years have developed into a large body of literature on the subject testimony, and which were presented to our court.[1]
GLICKSTEIN, J., concurs.
FARMER, J., concurs specially with opinion.
DELL, J., concurs in part and dissents in part with opinion.
FARMER, Judge, concurring specially.
I agree that the trial judge, in rejecting the defendant's proffer of expert witness testimony as to psychological factors affecting the reliability of eyewitness identifications, properly followed Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). The opinion of the supreme court in that case is to my mind a rather categorical holding that such evidence is inadmissible. Although the court initially cast its thinking in abuse of discretion terms, it quickly added:
"Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. [c.o.] We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony."
438 So.2d at 777. I think that a trial judge might fairly read these two sentences as nothing less than the per se exclusion of expert testimony on the psychological factors affecting the reliability of eyewitness identifications.
I also agree with Judge Glickstein, though, that it is perhaps time for the supreme court to confront this issue once again. The state protests that the passage of a mere 12 years is too soon to ask the court to rethink an earlier holding. But the world of psychology and the subject of eyewitness identifications has turned over several times in that brief span. As in so many other areas of human endeavor, the future seems to blur past us and change is now a regular feature of our lives. The state of the art today is considerably different.
Acknowledging this is rather uncomfortable for me, for I am no blind partisan of the academic discipline concerned. Indeed, I should admit to a certain quarrel with the social "sciences" in general and psychology in particular. They are, it seems to me, founded *343 on an almost indefensible premise: that one can fairly deduce some truths about an individual by what classes of human beings do in the aggregate. That seems to me so at odds with the human free will that any conclusions founded on the premise are intrinsically unreliable. By such methodology one might stumble into the truth about as often as 60 computers typing randomly for infinity might turn out all of the great literary works of western civilization.
But that is merely (I stress!) a personal, not a juridical bias. As a judge I acknowledge that there is now an established body of thought that accepts the premise and its methodology. There is no denying, moreover, that it has worked its way into our rules of evidence in important ways. We admit it to tell us whether this parent or that is the appropriate one for custody of children. We admit it to determine whether one is sufficiently capable of standing trial on criminal charges and, equally, whether one can escape punishment for the crime on account of insanity. We admit it to assist the jury in determining the existence of sexual abuse. And we admit such evidence to determine whether to allow a person to refuse medical care without which the person will surely die. It strikes me that a generation ago the received wisdom in some of these areas held that jurors were fully capable of deciding such issues without the assistance of expert testimony from psychologists. But now too it is thought fair to ask whether a particular eyewitness identification is so colored by unappreciated human factors as to be inherently unreliable.
If I understand the showing made by defendant below, there is now a considerable body of respectable psychological wisdom addressing the subject, propounding theories, developing tests and yardsticks and vocabulary, conducting research projects and writing papers  all the impedimenta of the social sciences. It also appears that little or none of this was acknowledged or recognized in 1983 when our supreme court rendered its Johnson opinion.
Quite apart from the social scientists, there are the cases cited in Judge Glickstein's opinion. The leading one is People v. McDonald, 208 Cal. Rptr. 236, 690 P.2d 709, 37 Cal.3d 351 (1984), written by a widely respected California jurist. In that case, as here, the proffered evidence would have shown how "popular misconceptions" affect the process of eyewitness identification and render some unreliable. Moreover, an additional feature of the testimony was that the received "common sense" (what epistemologists call naive realism) on the subject was severely compromised by recent study and analysis that would be unknown to the ordinary juror. If that be true, then the major premise of Johnson is now seriously in doubt. In deciding that the evidence should be admissible in California courts, Justice Mosk wrote for the court:
"We conclude that although jurors may not be totally unaware of the foregoing psychological factors bearing on eyewitness identification, the body of information now available on these matters is `sufficiently beyond common experience' that in appropriate cases expert opinion thereon could at least `assist the trier of fact.'" [c.o.]
208 Cal. Rptr. at 248, 690 P.2d at 721. I am unable to find the crack in his logic, at least as regards the case now before us.
I do not agree with Judge Dell that our supreme court has reconsidered the issue since Johnson. All of the cases cited by Judge Dell are direct appeals of capital murder convictions to the supreme court. None of them involve a certified question from a district court of appeal certifying the need for reconsideration. Moreover, there is something slightly off center about some of his cited cases. Espinosa v. State, 589 So.2d 887 (Fla. 1991) involved an order refusing to authorize the costs for such an expert and merely followed Johnson. Lewis noted that the proffered witness would not testify as to the reliability of any specific identification but would merely comment generally on how an eyewitness arrives at the identification conclusion. In Rogers v. State, 511 So.2d 526 (Fla. 1987) the expert was permitted to testify, and the court merely affirmed restrictions on the scope of the testimony, noting that defendant had been permitted to pose hypothetical questions about the ability of a witness to make an accurate identification years *344 after an event. Hooper v. State, 476 So.2d 1253 (Fla. 1985) was but two years after Johnson and merely followed it without discussion. Hence, it cannot be fairly suggested that the supreme court has ever actually reconsidered Johnson.
Yet I also fear that expert testimony is in danger of becoming overused. It is not just the much publicized trial in California that suggests an abuse. It sometimes seems to me that experts are called on issues merely to permit the party using the expert to make an argumentum ad verecundiam to the jury or judge. I fully agree with the principle that experts should not be permitted when the issue on which they will testify is well within the ordinary experience and understanding of the average juror.
Here the principal  indeed only  evidence tying this defendant to the holdup of the store were the eyewitness identifications by the two owner-employees of the store, husband and wife, who were present during the holdup. One of the witnesses was outside the store sweeping when someone approached her from behind, showed her a gun and pushed her toward the store. The husband was inside the store attempting to catch a glimpse of his wife's assailant when he was shot. The assailant, of a different race than the witnesses, immediately fled. The entire incident consumed mere seconds.
Defendant was initially not among the police suspects. On the day after, the wife told police detectives that she had never seen her assailant before the incident. Nearly two months after the shooting, the witnesses' son called police detectives and reported that his parents had seen the assailant in their drivethrough window earlier that day. Police arranged a photographic showup at the store. When the array of photos was laid before the witnesses, the wife told the husband that defendant was the one who had shot him. At trial the wife testified, in spite of her statement to the police after the incident, that she had recognized her assailant as an occasional customer of her store. Both witnesses identified defendant as the perpetrator. On the other hand, three alibi witnesses testified of defendant's whereabouts elsewhere. The defendant testified that he was not the person who accosted her and shot him. I think these circumstances present a plausible case for a trial judge to conclude that the admission of the expert testimony proffered might be of assistance to the jury in this case.
Recently the supreme court has decided that expert testimony on the subject of a survivor's grief is admissible in a wrongful death action. Angrand v. Key, 657 So.2d 1146 (Fla. 1995). The principal argument against the admission of the evidence had been, as here, that the subject of the proffered evidence was something that the average juror is well familiar with and doesn't need an expert to discern the genuine from the false. In allowing for the admission of such evidence the court said:
"Clearly, psychiatrists, psychologists, or other qualified physicians who have treated a survivor or reviewed records concerning a survivor's treatment for physical or mental sequelae related to mental pain and suffering caused by the death of a survivor's decedent may provide testimony which will assist the jury in understanding evidence and deciding damages issues. Further, we recognize that the experience, age, and other relevant information about the jurors or the facts in a particular case could provide a basis for the trial judge to conclude that Dr. Platt or a person with similar expertise, training, and education would assist the jury in understanding the evidence or in deciding the appropriate damages. These are factors to be considered by the trial judge in the exercise of his or her discretion."
657 So.2d at 1148-49. The court did not require the admission of grief evidence but left it to the sound discretion of the trial judge to admit it when the judge concludes that it is reasonably likely to assist the jury. I think much the same rationale could be argued here.
Yet I also believe that the trial judge felt no choice but to follow Johnson. I therefore vote to affirm but join in certifying the question proposed by Judge Glickstein.
DELL, Judge, concurring in part and dissenting in part.
I concur with the majority that appellant's conviction and sentence must be affirmed. *345 However, I respectfully dissent from the question certified by the majority as a question of great public importance. As I read the majority's opinion, its basis for certification is grounded primarily upon the passage of time since the supreme court's opinion in Johnson v. State and not upon any express disagreement by my colleagues with the holding stated therein. The state has shown that the supreme court has more recently revisited the question presented sub judice and has consistently concluded, as it did in Johnson:
We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony. We find no abuse of discretion in the trial court's refusal to allow this witness to testify about the reliability of eyewitness identification.
Id. at 777 (footnote omitted). See Espinosa v. State, 589 So.2d 887 (Fla. 1991); Lewis v. State, 572 So.2d 908 (Fla. 1990); Rogers v. State, 511 So.2d 526 (Fla. 1987); Hooper v. State, 476 So.2d 1253 (Fla. 1985).
No compelling reason has been offered that shows the interests of justice would be greater served by carving out another area for the admission of expert testimony concerning the fallibility of an eyewitness's identification in either criminal or civil proceedings. The cross-examination of witnesses, the jury instructions and the general knowledge of jurors provide an adequate basis to evaluate an eyewitness's credibility. Expert testimony ordinarily tends to explain matters not within the common sense and understanding of the jury. The admission of expert testimony to explain matters covered in the court's instruction concerning the weight to be given an eyewitness's testimony invades what has been and should be the exclusive province of the jury.
For these reasons, I respectfully dissent.
NOTES
[1] United States v. Downing, 753 F.2d 1224 (3d Cir.1985); Skamarocius v. State, 731 P.2d 63 (Alaska Ct. App. 1987); State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983); People v. McDonald, 37 Cal.3d 351, 208 Cal. Rptr. 236, 690 P.2d 709 (1984); State v. Campbell, 847 P.2d 228 (Colo.Ct. App. 1992); People v. Beckford, 141 Misc.2d 71, 532 N.Y.S.2d 462 (1988); People v. Lewis, 137 Misc.2d 84, 520 N.Y.S.2d 125 (1987); State v. Whaley, 305 S.C. 138, 406 S.E.2d 369 (1991); State v. Moon, 45 Wash. App. 692, 726 P.2d 1263 (1986); Hagan, When Seeing is Not Believing: The Case for Eyewitness Expert Testimony, 81 Geo.L.J. 741 (1993); Holt, Expert Testimony on Eyewitness Identification: Invading the Province of the Jury?, 26 Ariz.L.Rev. 399 (1984); Johnson, Cross-Racial Identification Errors in Criminal Cases, 69 Cornell L.Rev. 934 (1984); Kassin, Ellsworth & Smith, The "General Acceptance" of Psychological Research on Eyewitness Testimony, Am.Psychologist, Aug. 1989, at 1089; Lloyd-Bostock & Clifford, Evaluating Witness Evidence: Recent Psychological Research and New Perspectives (1983); Penrod & Cutler, Eyewitness Expert Testimony and Jury Decisionmaking, 52 L. & Contemp.Probs. 43 (1989); Sobel, Eyewitness Identification: Legal and Practical Problems (2d ed. 1983); Wells & Loftus, Eyewitness Testimony: Psychological Perspectives (1984).