PARIENTE, J.,
concurring.
I concur in the majority opinion affirming the posteonviction court’s denial of relief and denying Peterson’s habeas corpus petition, and agree that counsel’s failure to utilize an eyewitness identification expert in this ease did not constitute ineffective assistance of counsel. However, because I am concerned that our prior jurisprudence has left the impression that testimony of an eyewitness identification expert is generally inadmissible, I write separately to explain why such testimony should be generally admissible to assist the jury in determining the reliability of eyewitness identifications, especially in cases resting substantially or entirely on eyewitness testimony.
Specifically, I would adopt the rationale of the Supreme Court of Connecticut in State v. Guilbert, 306 Conn. 218, 49 A.3d 705, 720 (2012), and conclude that this Court’s precedent, which suggests that factors affecting eyewitness testimony are within the common experience of jurors, is “out of step with the widespread judicial recognition that eyewitness identifications are potentially unreliable in a variety of ways unknown to the average juror.” Indeed, as noted in Guilbert, the widely accepted scientific research available today “convincingly demonstrates the fallibility of eyewitness identification testimony and pinpoints an array of variables that are most likely to lead to a mistaken identification.” Id. at 721. Accordingly, in cases involving eyewitness testimony, I encourage trial courts to truly exercise their discretion in determining whether to admit expert testimony on eyewitness identifications, which oftentimes has the potential to aid the jury in evaluating this extremely weighty evidence.
Among multiple claims and subclaims of guilt-phase ineffectiveness, Peterson claimed that his lawyer was ineffective in dealing with the eyewitness identification evidence presented to the jury. Although I agree with the majority that the defense attorney’s failure to consult with an eyewitness identification expert did not constitute ineffective assistance of counsel in this *286 case, I remain concerned that this Court’s prior precedent may erroneously lead some practitioners and judges to the conclusion that this type of expert testimony is per se inadmissible. In actuality, the admissibility of expert testimony regarding the reliability of eyewitness identifications is properly determined on a case-by-case basis depending on the specific factual circumstances of the case. See Johnson v. State, 438 So.2d 774, 777 (Fla.1983) (adopting an abuse of discretion standard for determining whether the trial court erred in excluding expert testimony on eyewitness identification). Moreover, although trial counsel’s failure to consult with an expert in eyewitness identification was not deficient in this case, it is simply against the weight of scientific authority and the recent decisions of courts throughout the country that have addressed this issue to conclude'that jurors never require “special knowledge or experience” to determine the reliability of eyewitness identification. Id.
As the Supreme Court of New Jersey recognized in State v. Delgado, 188 N.J. 48, 902 A.2d 888, 895 (2006), “[mjisidentifi-cation is widely recognized as the single greatest cause of wrongful convictions in this country.” For that reason, the Innocence Commission appointed by the Florida Supreme Court to analyze the causes of wrongful convictions chose eyewitness mis-identification as its first area of study. Florida Innocence Commission, Final Report to the Supreme Court of Florida 18 (2012). Indeed, citing analysis undertaken by the Innocence Project, the Florida Innocence Commission noted that eyewitness misidentification has played a role in more than seventy-five percent of convictions that were subsequently overturned through DNA testing. Id.
Thirty-one years ago, prior to the scientific studies available today pointing out the flaws in eyewitness testimony, I can understand how this Court might have concluded that “a jury is fully capable of assessing a witness’ ability to perceive and remember ... without the aid of expert testimony.” Johnson, 438 So.2d at 777. However, even in reaching this conclusion, rather than electing a per se rule of exclusion, this Court adopted an abuse of discretion standard. Id.
Unfortunately, though, this Court offered no real guidance as to how a trial court should determine the admissibility of an eyewitness identification expert and even indicated that there was no reason to admit such testimony, stating as follows:
A trial court has wide discretion concerning the admissibility of evidence and the range of subjects about which an expert can testify. Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. We hold that a jury is fully capable of assessing a witness’ ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony.
Id. (citations omitted). As I have previously explained, “[i]n so. holding, we signaled to trial judges that expert testimony in this area is unnecessary because the assessment of eyewitness identification is within the common experience of jurors.” Simmons v. State, 934 So.2d 1100, 1123-24 (Fla.2006) (Pariente, C.J., specially concurring). However, subsequent research in the area of eyewitness identification has clearly demonstrated that the reliability of eyewitness identification testimony is subject to a multitude of factors, the effects of which are often not within the realm of an average juror’s general knowledge.
The powerful impact that eyewitness identification evidence has on jurors can *287 not be overstated. That such testimony has the potential to sway a jury towards a conviction provides even more reason for this Court to take note of subsequent studies on the issue of eyewitness identification that have undermined this Court’s conclusion in Johnson that expert testimony is unnecessary for a jury to assess eyewitness identification evidence. As I have previously noted:
For example, common sense would lead us to believe that greater certainty by an eyewitness in making an identification corresponds to greater accuracy. Yet research shows that a witness’s degree of certainty correlates weakly, at best, with the accuracy of the identification. See Elizabeth Loftus & James Doyle, Eyewitness Testimony: Civil and Criminal § 8-12, at 67 (3d ed. 1997) (“The consensus of the literature that deals with [whether eyewitness confidence is an indication of eyewitness accuracy] seems to indicate that eyewitness confidence is not a very good indicator of eyewitness accuracy.”). In fact, the “certainty an eyewitness expresses in his identification can be a misleading indicator of the identification’s accuracy.” Gary L. Wells, Eyewitness Identifications: Scientific Status, in Science In the Law: Social and Behavioral Science Issues 391, 412 (David L. Faigman et al. eds., 2002). Other features of eyewitness unreliability, such as difficulty identifying persons of another race, have also become well established. See Loftus & Doyle, supra. § 4-9, at 86; Wells, supra, at 404.
Simmons, 934 So.2d at 1124 (Pariente, C.J., specially concurring).
Since our decision in Simmons, courts throughout the country have continued to take notice of the growing body of scientific research on eyewitness identifications and have repeatedly recognized that expert testimony on eyewitness identification provides jurors with information that is beyond an average juror’s general knowledge. For example, only three years after this Court’s decision in Simmons, the Supreme Court of Utah, in concluding that a trial court had abused its discretion by excluding expert witness testimony, held that “the testimony of a qualified expert regarding factors that have been shown to contribute to inaccurate eyewitness identifications should be admitted whenever it meets the requirements of [the Utah rules of evidence].” State v. Clopten, 223 P.3d 1103, 1112 (Utah 2009). Further, the Supreme Court of Utah went on to explain that it expected its decision in Clopten to “result in the liberal and routine admission of eyewitness expert testimony.” Id.
The Supreme Court of Connecticut reached a similar conclusion in Guilbert, noting that while the court had previously concluded that expert testimony on eyewitness identification was inadmissible because. “the reliability of eyewitness identification is within the knowledge of jurors,” State v. Kemp, 199 Conn. 473, 507 A.2d 1387, 1389 (1986), its prior decisions on the issue were “out of step with the widespread judicial recognition that eyewitness identifications are potentially unreliable in a variety of ways unknown to the average juror.” Guilbert, 49 A.3d at 720. Relying on “extensive and comprehensive research, as reflected in hundreds of peer reviewed studies and meta-analyses,” the Supreme Court of Connecticut explained that scientific evidence “convincingly demonstrates the fallibility of eyewitness identification testimony and pinpoints an array of variables that are most likely to lead to a mistaken identification.” Id. at 721. Thus, the Supreme Court of Connecticut concluded that “[m]any of the factors affecting the reliability of eyewitness identifications are ei-. ther unknown to the average juror or *288 contrary to common assumptions, and expert testimony is an effective way to educate jurors about the risks of misidentifi-cation.” Id. at 731.
Citing the Supreme Court of Connecticut’s decision in Guilbert, the Supreme Court of Oregon stated that “courts around the country have recognized that traditional methods of informing factfin-ders of the pitfalls of eyewitness identification — cross-examination, closing argument, and generalized jury instructions — frequently are not adequate to inform factfin-ders of the factors affecting the reliability of such identifications.” State v. Lawson, 852 Or. 724, 291 P.3d 673, 695 (2012) (citing Guilbert, 49 A.3d at 705). In light of this conclusion, the Supreme Court of Oregon explained that “the use of experts may prove vital to ensuring that the law keeps pace with advances in scientific knowledge, thus enabling judges and jurors to evaluate eyewitness identification testimony according to relevant and meaningful criteria.” Id. at 696.
These decisions represent the modern trend among courts that have addressed the admissibility of expert testimony on eyewitness identification. As noted by the Supreme Court of Connecticut, there is now a “widespread judicial recognition that eyewitness identifications are potentially unreliable in a variety of ways unknown to the average juror.” Guilbert, 49 A.3d at 720. By bringing to light research findings on factors that affect an eyewitness identification, which would otherwise be beyond a juror’s general knowledge, expert testimony within this area can assist the trier of fact in correctly determining a defendant’s guilt.
Given the widespread judicial acceptance of the fact that the reliability of eyewitness testimony is subject to factors beyond the common knowledge of jurors, I once again encourage trial courts to “truly exercise their discretion as to the admission of this testimony.” Simmons, 934 So.2d at 1126 (Pariente, C.J., specially concurring). As the burgeoning body of scientific research indicates and courts across the country increasingly recognize, expert witness testimony on the reliability of eyewitness identifications can be a “powerful tool in helping the criminal justice system achieve its goal of convicting the guilty while acquitting the innocent.” Id. It is my hope that when this Court is squarely faced with the issue in a direct appeal case, we will seize the opportunity to recede from Johnson, join the modern trend, and hold that eyewitness identification expert testimony should be generally admissible, especially in cases resting substantially or entirely on eyewitness testimony, as long as the other predicates for admissibility are met.
QUINCE, J., concurs.