A jury convicted Ted Williams of attempted murder and of robbery in the first degree, based on evidence that he had slashed a woman's throat and had stolen her purse. Williams was sentenced to a term of 25 years in the state penitentiary on the attempted murder conviction and 20 years on the robbery conviction. Williams appealed to the Court of Criminal Appeals, which affirmed his convictions with an unpublished memorandum, 586 So.2d 310. This Court granted Williams's petition for the writ of certiorari to examine the issue whether the trial court abused its discretion in refusing to allow Williams's expert witness to testify as to the reliability of the State's eyewitness testimony. *Page 1226 
The evidence adduced by the State linking Williams to the incident at issue consisted of the victim's eyewitness identification of Williams as her assailant and the corroboration, by police investigators, of the victim's identification of Williams. The evidence reveals that the police initially interviewed the victim at the scene of the attack and at the hospital while her wounds were being treated.
On the morning following her attack, the victim went to the police station and worked with a police detective in preparing a composite sketch of her attacker. On that day or the next, the police had the victim view a "photograph line-up." The victim stated that she looked at the photographs and immediately eliminated four of the six pictures. She continued to look at the other two photographs, one of which was Williams's, but was ultimately unable to make a positive identification from those two.
On the evening after viewing the photograph line-up, the victim went to the police station and viewed a live line-up. The victim testified that she immediately picked out Williams from the line-up as being her attacker. Furthermore, at trial, the victim once again identified Williams as her attacker.
In Williams's defense, Williams's counsel sought to introduce, over the State's objection, the testimony of Dr. Norman Ellis, a psychologist at the University of Alabama. Dr. Ellis was tendered as an expert in the field of human memory and learning. Williams's counsel sought to present, through Dr. Ellis, expert testimony concerning the way in which the victim's eyewitness identification may have been influenced by human memory processes.
After an extensive voir dire examination of Dr. Ellis had taken place, the trial court sustained the State's objection to Dr. Ellis's testimony. In sustaining the State's objection, the trial court cited Hancock v. City of Montgomery, 428 So.2d 29
(Ala. 1983), wherein this Court held that where the record indicated that a criminologist, who was tendered as an expert witness, was not familiar with the facts surrounding the automobile accident at issue, the trial court did not abuse its discretion in refusing to accept the criminologist as an expert witness.
Initially, we note that the admissibility of expert testimony on the subject of human memory processes has never been considered by the appellate courts of this state, although a number of courts in other jurisdictions have considered the issue. Williams cites us to several of those cases in which expert testimony on the subject of human memory processes has been allowed. Perhaps the most instructive of these cases isUnited States v. Downing, 753 F.2d 1224 (3d Cir. 1985).
The issue in Downing was whether a defendant in a criminal prosecution should be permitted to adduce, from an expert in the field of human perception and memory, testimony concerning the reliability of eyewitness identifications. The district court had refused to admit the testimony of a psychologist offered by the defendant, apparently because the court believed that such testimony could never meet the "helpfulness" standard of Fed.R.Evid. 702. In reversing the judgment of the district court, the Downing court first noted that the admission of expert testimony on the subject of human memory processes is not automatic but conditional. The court went on to hold that the admissibility of such evidence is determined by a balancing test centering on two factors: (1) the reliability of the scientific principles upon which the expert testimony rests, hence the potential of the testimony to aid the jury in reaching an accurate resolution of a disputed issue; and (2) the likelihood that introduction of the testimony may in some way overwhelm or mislead the jury.
The Downing court further indicated that admissibility should also depend upon a showing that scientific research has established that particular features of the eyewitness identifications involved may have impaired the accuracy of those identifications. The court also concluded that a district court's ruling on the admissibility of such expert testimony will be reviewable under an abuse of discretion standard, with *Page 1227 
the district court retaining the discretionary authority to exclude any relevant evidence that would unduly waste time or confuse the issues at trial.
Our research in this case reveals many cases in accord withDowning. E.g., United States v. Alexander, 816 F.2d 164 (5th Cir. 1987); United States v. Moore, 786 F.2d 1308 (5th Cir. 1986); People v. McDonald, 37 Cal.3d 351, 208 Cal.Rptr. 236,690 P.2d 709 (1984). It is clear from these cases that there is presently a trend in the law to allow expert testimony on the subject of human memory. In keeping with that trend, we hold that expert testimony on the subject of human memory can be introduced into evidence in cases turning on an eyewitness identification. We further hold, however, that the admissibility of such evidence is, like all other types of expert testimony, subject to the discretion of the trial court,see Rannells v. Graham, 439 So.2d 12 (Ala. 1983). Furthermore, the trial court's rulings on the admissibility of such evidence will not be disturbed on appeal absent a clear abuse of that discretion. Hulcher v. Taunton, 388 So.2d 1203 (Ala. 1980). After reviewing the record in the present case, we find no abuse of discretion by the trial court in refusing to admit the expert testimony.
The trial transcript reveals the following colloquy, which took place at the conclusion of the voir dire examination of Dr. Ellis by both the State and Williams's counsel:
 "THE COURT: Let me ask this. Do you know [the victim] in this case?
"[DR. ELLIS]: No, sir.
"THE COURT: Have you ever talked to her?
"[DR. ELLIS]: No, sir.
 "THE COURT: Do you know anything about her experience, educational background or occupation or vocation?
 "[DR. ELLIS]: I believe [Williams's counsel] told me she had done some portrait artist work or something one time. That's all I can come up with.
 "THE COURT: Do you know anything at all about the facts and circumstances surrounding this case?
 "[DR. ELLIS]: The transcript I read, the preliminary, that's all.
"THE COURT: What was that? Do you remember?
 "[DR. ELLIS]: It was a document [Williams's counsel] sent me.
"THE COURT: Can you tell me what it was?
 "[DR. ELLIS]: My memory is rather poor, because it was some weeks ago and I read it rather hurriedly. It had to do with some of the facts, details of the case in terms of where the event occurred, and what happened at that time. And I can't remember whether it was question and answer of the witness or not. I do remember some of the details about the event.
"THE COURT: Like what?
 "[DR. ELLIS]: Well, that the man was mumbling to himself and he approached her at a little theater somewhere and he snatched her purse and they struggled. I remember she had a Coca-Cola bottle in her hand, as I remember. Her throat was cut. The police were called and they gave her first aid. That's about the extent of what I remember."
Following this colloquy, the trial court, in ruling Dr. Ellis's testimony inadmissible, stated:
 "If he [Dr. Ellis] had conducted an examination of this witness and had run tests, and that kind of thing, it would be different. Since he admittedly knows nothing about her, other than what you've outlined, the Court feels any probative value here is outweighed by the prejudicial effect of it. . . ."
From this excerpt from the transcript and from the trial court's stated reliance on Hancock v. City of Montgomery,supra, it appears that the trial court's ruling on the State's objection to Dr. Ellis's testimony was based upon the fact that Dr. Ellis was not familiar with the facts of the case and had had no personal contact with the victim. Therefore, we conclude that the trial court did not abuse its discretion in ruling Dr. Ellis's testimony inadmissible. *Page 1228 
The judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.