714 So.2d 368 (1998)
Scott E. McMULLEN, Petitioner,
v.
STATE of Florida, Respondent.
No. 86684.
Supreme Court of Florida.
April 9, 1998.
Rehearing Denied June 10, 1998.
L. Martin Reeder, Jr. and Kim A. Prine of Steel, Hector and Davis, West Palm Beach, Margaret B. Reeder, Palm Beach Gardens, and Evelyn A. Ziegler, West Palm Beach, for Petitioner.
Robert A. Butterworth, Attorney General, Georgina Jimenez-Orosa, Bureau Chief, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for Respondent.
John F. Tierney, III of Tierney and Haughwout, West Palm Beach, for the Florida Association of Criminal Defense Lawyers, amicus curiae.
PER CURIAM.
We have for review McMullen v. State, 660 So.2d 340 (Fla. 4th DCA 1995), in which the *369 district court affirmed petitioner's conviction, upholding the trial court's denial of Scott E. McMullen's request to use an expert witness to testify regarding factors that affect the reliability of eyewitness identification. In so ruling, the district court certified the following question as one of great public importance:
WHEN THE SOLE ISSUE IN A CRIMINAL PROSECUTION IS ONE OF IDENTITY AND THE SOLE INCRIMINATING EVIDENCE IS EYEWITNESS TESTIMONY, SHOULD THE COURT ADMIT EXPERT TESTIMONY UPON THE FACTORS THAT AFFECT THE RELIABILITY OF EYEWITNESS IDENTIFICATION?
Id. at 342. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we decline to answer the certified question as worded. We hold that the admission of such testimony is within the discretion of the trial judge and that, in this case, the trial judge did not abuse that discretionary authority by refusing to allow the introduction of the expert testimony. Thus the district court's affirmance of petitioner's conviction is hereby approved.

MATERIAL FACTS[1]
Scott E. McMullen was charged by a three-count information for shooting into a dwelling, aggravated assault (with a firearm), and aggravated battery (with a firearm). On the night of the offenses, an assailant allegedly approached Sheron Grewal while she was sweeping the parking lot outside of the beer store she owned with her husband, Mohinder. After grabbing Sheron by the shoulder, the assailant tried to push her inside the store. When she resisted, he brandished a gun and shoved it into her side. Hearing noises outside, Mohinder, who was inside the store attending the cash register, walked toward the doorway. As he approached the doorway, he caught a glimpse of the assailant, who shot him and then turned and fled. Both Mohinder and Sheron identified McMullen as the assailant. We also note, as did Judge Farmer in his concurring opinion, that the assailant was of a different race than the witnesses and that McMullen was initially not among the police suspects. Further, the wife told the police detectives that she had never seen the assailant before the incident. Two months after the shooting, the witnesses' son called the police detectives and reported that his parents had seen the assailant in their drive-through window earlier that day. The police arranged a photographic lineup at the store. When the array of photographs was presented to the witnesses, the wife told the husband that McMullen was the one who had shot him. Contrary to her initial statement to the police after the incident, the wife testified at trial that she recognized the assailant as an occasional customer at the store. Both the husband and wife identified McMullen as the perpetrator. Alibi witnesses were presented by McMullen, and McMullen testified that he was not the person who accosted the wife and shot the husband.
Prior to trial, McMullen filed a motion to appoint an expert witness on eyewitness identification. The trial judge granted the motion, but the order did not address the admissibility of that expert's testimony. Subsequently, the State filed a motion in limine to exclude the defense expert on eyewitness identification. The State argued that the expert testimony should not be admitted because it was invading the province of the jury. McMullen's counsel proffered the testimony of Dr. John Brigham, a professor of psychology at Florida State University, regarding psychological factors believed to affect the reliability of eyewitness identification. According to Dr. Brigham, countless scientific studies have been conducted indicating that psychological factors, which are largely unknown to laypersons, can affect the accuracy of eyewitness identifications. Specifically, Dr. Brigham stated that he could testify about the following six issues at trial: (1) eyewitness identifications are incorrect much more often than the average person thinks; (2) a witness's confidence or certainty in an identification is unrelated to the accuracy of the identification; (3) cross-racial identifications are more difficult than same-race identifications; (4) "unconscious transference," *370 i.e., it is easier for a person to remember a face than to remember the circumstances under which the person saw the face; (5) the accuracy of facial identifications decreases in stressful situations; and (6) the accuracy of identification decreases as the interval between the event and the time when the witness attempts to retrieve the memory increases.
As noted, the State objected to the introduction of Dr. Brigham's testimony, arguing that the substance of his testimony did not require any special knowledge or experience to assist the jurors in reaching their conclusions. During the argument on the motion in limine, the State argued that under this Court's decision in Johnson v. State, 438 So.2d 774 (Fla.1983), the admission of Dr. Brigham's testimony was within the discretion of the trial court. McMullen's counsel agreed, stating:
No, I think the State's case also stands for the proposition that the decision to allow expert testimony is subject to discretion of the trial court and probably not subject to review absent a review of discretion. And I believe, Judge, that that is the case, but that also stands for the proposition that you could either decide to allow it and not allow it and it would be clearly this court's decision but you could admit it.
The State responded:
I would agree with [McMullen's counsel]. As he pointed out to the court, this is clearly something within Your Honor's discretion to let in or not let in.
Relying on the discretionary authority enunciated in Johnson, the trial judge excluded the testimony, finding:
This Court is of the opinion that the facts testified to by Dr. Brigham are not of such a nature as to require special knowledge in order for a jury to reach a decision. In Johnson v. State, the Florida Supreme Court, in affirming the trial court's refusal to allow the testimony of an expert witness in the field of eyewitness identification, held:
"[A] jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony."
660 So.2d at 341 (citation omitted).
Subsequently, the jury found McMullen guilty of all charges.
On appeal, the Fourth District Court of Appeal affirmed on the authority of our decision in Johnson but certified the above question to this Court.

OTHER JURISDICTIONS
At the outset, it must be understood that there are three differing views as to the admissibility of an expert witness's testimony regarding the reliability of eyewitness identification. The first is the "discretionary" view, which provides that the admission of expert testimony regarding eyewitness identification is in the discretion of the trial judge. An overwhelming majority of both federal[2] and state[3] courts that have addressed this issue have adopted this view.
*371 The second view is the "prohibitory view," which expressly prohibits the use of this type of expert testimony. The Eleventh Circuit Court of Appeals has adopted a per se rule prohibiting the introduction of expert testimony with regard to the credibility of eyewitness identification testimony under any circumstances. United States v. Holloway, 971 F.2d 675 (11th Cir.1992).[4] That holding means, of course, that such expert testimony cannot be used in any federal court in our jurisdiction. A few other courts appear to have adopted this view. See State v. Goldsby, 59 Or.App. 66, 650 P.2d 952 (1982); Commonwealth v. Simmons, 541 Pa. 211, 662 A.2d 621 (1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996); State v. Wooden, 658 S.W.2d 553 (Tenn.Crim.App. 1983).
Finally, some jurisdictions have adopted the "limited admissibility" view, finding it to be an abuse of discretion to exclude this type of expert testimony in cases where there is no substantial corroborating evidence. Apparently, only two courts have adopted this view: United States v. Downing, 753 F.2d 1224 (3d Cir.1985), and People v. McDonald, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984). This last decision by the California Supreme Court reversed a conviction where an expert was not allowed to testify, reasoning:
When an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully understood by the jury, it will ordinarily be error to exclude that testimony.
Id., 208 Cal.Rptr. at 253-54, 690 P.2d at 727.[5] It also could be argued that the Supreme Court of Massachusetts in Commonwealth v. Santoli agrees with this view by its holding that, when corroborating evidence is available, the exclusion of expert testimony is not an abuse of discretion. 424 Mass. 837, 680 N.E.2d 1116 (1997).

FLORIDA
We have adopted the majority "discretionary" view in this state. In Johnson, we stated:
Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of exert testimony. We find no abuse of discretion in the trial court's refusal to allow this witness to testify about the reliability of eyewitness identification.

438 So.2d at 777 (citation and footnote omitted) (emphasis added). In Johnson, the defendant was convicted of first-degree murder and sentenced to death. 438 So.2d at 775. At trial, the defendant attempted to call as an expert witness a professor of psychology to testify about common problems with eyewitness identifications and the factors affecting the accuracy of eyewitness identification. Id. at 777. On review, we provided several reasons for supporting the trial court's exclusion of the expert testimony. First, we reiterated that trial courts have wide discretion concerning the admissibility of evidence and the range of subjects about which an expert can testify. Id. Second, we concluded that the trial court did not abuse its discretion because expert testimony should be excluded when the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form its conclusions. Id. Finally, we held *372 that "a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." Id.
Since we issued our decision in Johnson, we have addressed the issue of expert testimony regarding the reliability of eyewitness identification in four other cases. Espinosa v. State, 589 So.2d 887 (Fla.1991), reversed on other grounds, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992); Lewis v. State, 572 So.2d 908 (Fla.1990); Rogers v. State, 511 So.2d 526 (Fla.1987); Hooper v. State, 476 So.2d 1253 (Fla.1985). In each of these cases, we have approved the exclusion of part or all of expert testimony or approved the denial of costs for same based on our decision in Johnson.
In Espinosa v. State, 589 So.2d 887 (Fla. 1991), we quoted our holding in Johnson that "a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." Id. at 893. We cited that same language in Lewis v. State, 572 So.2d 908 (Fla.1990), where the expert witness admitted he could not testify as to the reliability of any specific witness, but could offer only general comments about how a witness arrives at his conclusions. Id. at 911. However, in Rogers v. State, 511 So.2d 526 (Fla. 1987), the trial court admitted the expert testimony of the same expert involved herein, and we cited Johnson in holding that the trial court did not abuse its discretion in limiting that expert's testimony.
Despite our findings in these cases, Johnson could be interpreted as a per se rule of inadmissibility of this type of testimony given our statement that "[w]e hold that jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." 438 So.2d at 777. See e.g., McMullen, 660 So.2d at 342 (Farmer, J. concurring specially) ("The opinion of the supreme court in [Johnson] is to my mind a rather categorical holding that such evidence is inadmissible.").
Despite the overwhelming view to the contrary, which includes the Eleventh Circuit Court of Appeals, McMullen has seized upon that confusion to urge us to follow what he asserts to be "the modern trend." According to McMullen, the modern trend advances the proposition that the admission of expert testimony on the reliability of eyewitness identification will enhance the jury's knowledge and help it resolve the issue presented, especially when eyewitness identification constitutes virtually the entire case against the defendant. We recognize that there are those who have written extensively in seeking the admission of expert testimony on this issue, arguing that the defendant should have the opportunity to present this type of expert testimony to challenge the credibility of eyewitnesses.[6] As noted previously, however, only a minority of jurisdictions have accepted this view.
We hereby reaffirm our holding in Johnson by concluding that the admissibility of expert testimony regarding the reliability of eyewitness testimony is left to the sound discretion of the trial judge. By so holding, we are continuing to align ourselves with a majority of other jurisdictions. Under our evidence code, § 90.702, Fla. Stat. (1997), the trial judge, in considering the admissibility of this type of evidence, must evaluate whether the evidence will assist the trier of fact in understanding the evidence or in determining a fact in issue. Angrand v. Key, 657 So.2d 1146, 1148 (Fla.1995).

*373 THE INSTANT CASE

Upon review of the record here, which includes statements to the trial court by counsel for both McMullen and the State agreeing that the trial court had the discretion to admit or exclude the expert's testimony, we conclude that the trial court understood that the admission of the expert's testimony was discretionary. Further, we cannot find that the trial court abused its discretion in excluding the testimony. The trial court was in a far superior position to that of an appellate court to consider whether the testimony would have aided the jury in reaching its decision.
We decline to address the other issues raised by McMullen, which are not within the scope of the certified question.
Accordingly, we decline to answer the certified question as worded, holding that the admission of such testimony is within the discretion of the trial judge and that, in this case, the trial judge did not abuse that discretionary authority by refusing to allow the introduction of the expert testimony. The decision of the district court of appeal is approved.
It is so ordered.
OVERTON, SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., concurs.
ANSTEAD, Justice, concurring in part and dissenting in part.
While I concur in what appears to be a concession in the majority opinion that trial courts should have discretion to admit expert opinion evidence on eyewitness identifications, I must dissent from the majority's unwillingness to acknowledge and retreat from our categorical holding in Johnson that such evidence should not be admitted, and from the majority's conclusion that the evidence was properly excluded in this case. While I am hopeful that somehow readers will conclude that the majority opinion, in fact, does retreat from Johnson to the extent of announcing that we have vested informed discretion in the trial court to admit expert testimony, I am fearful that the opinion just further muddies the waters on this important topic.
Let us consider the important issues the majority opinion fails to address: First, the certified question of great public importance. Presumably we accepted jurisdiction in this case because we agreed with the district court that the question certified was one of great public importance requiring resolution by this Court. However, having assumed jurisdiction we now cryptically announce that we are declining to address this important issue "[f]or the reasons expressed." Majority op. at 369. But look as I may, I cannot find any "reasons expressed" in the majority opinion for not answering the certified question. I would address the certified question and answer in the affirmative. Second, how can our holding in Johnson that jurors are fully capable of assessing eyewitness testimony without the assistance of expert evidence be reconciled with a rule vesting discretion in trial courts to admit such evidence? In other words, if jurors will never need or be aided by such evidence (Johnson) how can it be said that a court has "discretion" to admit it? Third, how can it be said that the trial court here exercised its informed discretion when it announced on the record that its decision to exclude the evidence was predicated upon our holding in Johnson that jurors do not need the assistance of experts to evaluate eyewitness testimony? Fourth, if such expert testimony is not to be admitted in this case, where the district court points out compelling and unique circumstances supporting its admission, then under what circumstances should it be admitted?

PROCEEDING BELOW
As noted by the majority, McMullen sought to offer the testimony of Dr. John Brigham, a professor of psychology at Florida State University. The appellant proffered Dr. Brigham's testimony. According to Dr. Brigham, countless scientific studies have been conducted which indicate that psychological factors, which are largely unknown to laypersons, can affect the accuracy of eyewitness *374 identifications. The State moved in limine to prevent Dr. Brigham from testifying, arguing that the substance of his testimony did not require any special knowledge or experience that would assist the jurors in reaching their conclusions. The trial court agreed and entered a written order specifically relying upon our decision in Johnson v. State, 438 So.2d 774 (Fla.1983):
This Court is of the opinion that the facts testified to by Dr. Brigham are not of such a nature as to require special knowledge in order for a jury to reach a decision. In Johnson v. State, the Florida Supreme Court, in affirming the trial court's refusal to allow the testimony of an expert witness in the field of eyewitness identification, held:
"[A] jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony."
McMullen v. State, 660 So.2d 340, 341 (Fla. 4th DCA 1995) (citation omitted). Subsequently, the jury found McMullen guilty of all charges.
On appeal, the Fourth District affirmed and made absolutely clear, in three separate opinions, that Johnson mandated, as a matter of law, the exclusion of Dr. Brigham's testimony:
Since Johnson controls the trial court and this court, there is no question in our mind that the trial court ruled correctly on the motion in limine and for the right reason. Nevertheless, we certify as a question of great public importance the following question:
WHEN THE SOLE ISSUE IN A CRIMINAL PROSECUTION IS ONE OF IDENTITY AND THE SOLE INCRIMINATING EVIDENCE IS EYEWITNESS TESTIMONY, SHOULD THE COURT ADMIT EXPERT TESTIMONY UPON THE FACTORS THAT AFFECT THE RELIABILITY OF EYEWITNESS IDENTIFICATION[?]
While the majority is aware that the supreme court categorically rejected such testimony in Johnson, which was decided in 1983, the court may want appellant's counsel, and amicus curiae if permitted, to present the current studies and decisions of other jurisdictions, which over the last twelve years have developed into a large body of literature on the subject testimony, and which were presented to our court.
660 So.2d at 341-42. We should especially note the district court's statement that the trial court based its exclusion of the expert on "the right reason," i.e., on the per se rule of Johnson. Judge Farmer specially concurred and noted:
I agree that the trial judge, in rejecting the defendant's proffer of expert witness testimony as to psychological factors affecting the reliability of eyewitness identifications, properly followed Johnson v. State, 438 So.2d 774 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). The opinion of the supreme court in that case is to my mind a rather categorical holding that such evidence is inadmissible. Although the court initially cast its thinking in abuse of discretion terms, it quickly added:
"Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. [c.o.] We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony."
438 So.2d at 777. I think that a trial judge might fairly read these two sentences as nothing less than the per se exclusion of expert testimony on the psychological factors affecting the reliability of eyewitness identifications.
660 So.2d at 342. And finally, Judge Dell concurred in the affirmance, but dissented as to the certification and observed that Johnson has consistently been interpreted as requiring exclusion:
I concur with the majority that appellant's conviction and sentence must be affirmed. However, I respectfully dissent from the question certified by the majority *375 as a question of great public importance. As I read the majority's opinion, its basis for certification is grounded primarily upon the passage of time since the supreme court's opinion in Johnson v. State and not upon any express disagreement by my colleagues with the holding stated therein. The state has shown that the supreme court has more recently revisited the question presented sub judice and has consistently concluded, as it did in Johnson:

We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony. We find no abuse of discretion in the trial court's refusal to allow this witness to testify about the reliability of eyewitness identification.
660 So.2d at 345. Hence, it is quite clear from the written order and opinions that the trial judge and the three appellate judges all agreed that Johnson had announced a per se rule of exclusion of expert evidence on this issue. We do nothing but add to the confusion by failing to acknowledge that Johnson has been interpreted as a per se rule of exclusion.

FLORIDA EVIDENCE CODE
Section 90.702, Florida Statutes (1997), provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
Recently, in Angrand v. Key, 657 So.2d 1146 (Fla.1995), we examined section 90.702 and those provisions of the Florida Evidence Code dealing with expert testimony and declined to establish a per se rule excluding expert testimony on the subject of grief and bereavement in tort actions. We reasoned that the trial court required discretion in determining whether to admit expert testimony in accordance with the intent expressed in section 90.702, "which is to admit expert testimony when it will assist the trier of fact in understanding the evidence or in determining a fact in issue." Id. at 1148. However, we cautioned trial courts to exercise their discretion in accordance with section 90.702's "helpfulness" test and attached the caveat that expert testimony should not be admitted "merely to relay matters which are within the common experience of jurors or to summarize what the expert has been told by lay witnesses." Id. at 1149.[7]

IDENTIFICATION TESTIMONY
In Johnson v. State, 438 So.2d 774 (Fla. 1983), and subsequent cases, we have affirmed the exclusion of expert testimony regarding factors that affect the reliability of eyewitness identification. See Espinosa v. State, 589 So.2d 887 (Fla.1991); Lewis v. State, 572 So.2d 908 (Fla.1990). In Johnson,[8] while giving some lip service to a trial court's discretion, we approved the exclusion of an *376 expert on eyewitness identification and stated in no uncertain terms: "Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions." We then laid the issue to rest by concluding: "We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." Id. It is this latter categorical holding that has been widely construed as a per se rule of exclusion. After all, under our own test, if a jury cannot be aided by the expert's testimony it should not be admitted.
In Espinosa v. State, 589 So.2d 887 (Fla. 1991), we quoted our holding in Johnson that "a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." Id. at 893. We cited that same language in Lewis v. State, 572 So.2d 908 (Fla.1990), where the expert witness admitted he could not testify as to the reliability of any specific witness, but could offer only general comments about how a witness arrives at his conclusions. Id. at 911. Interestingly, in Rogers v. State, 511 So.2d 526 (Fla.1987), we cited Johnson in holding that the trial court did not abuse its discretion in limiting the testimony of the same expert involved herein, Dr. Brigham.

FEDERAL CIRCUITS
There is a division of authority among the federal circuits on this issue. Consistent with Florida case law, the First and Ninth Circuits have precluded expert testimony on the reliability of eyewitness identifications. See United States v. Christophe, 833 F.2d 1296 (9th Cir.1987); United States v. Fosher, 590 F.2d 381 (1st Cir.1979).
In United States v. Downing, 753 F.2d 1224 (3d Cir.1985), the defendant was convicted of mail fraud, wire fraud, and interstate transportation of stolen property. The government's case against Downing rested almost exclusively on the testimony of eyewitnesses who, with varying degrees of certainty, testified that Downing was the man they knew as "Reverend Claymore." Id. at 1227. When Downing moved to present expert testimony on the unreliability of eyewitness testimony, the trial court denied his motion because, among other reasons, the court feared that the expert's opinion would usurp the "function of the jury." Id. at 1228. On appeal, the Third Circuit, finding that "this type of testimony can satisfy the helpfulness test of [Federal Rule of Evidence] 702,"[9]id. at 1230, vacated Downing's conviction and remanded for an evidentiary hearing on the admissibility of the proffered testimony. Id. at 1244; see also United States v. Stevens, 935 F.2d 1380, 1384 (3d Cir.1991) (finding abuse of discretion in trial court's refusal to permit expert testimony on lack of correlation between confidence and accuracy in eyewitness identifications).[10]

ADMISSION OF EXPERT TESTIMONY
Despite the adverse precedent in Florida and some federal appeals courts, McMullen *377 urges us to follow what he asserts to be "the modern trend," which advances the proposition that the admission of expert testimony on the reliability of eyewitness identification will enhance the jury's knowledge and help them resolve the issue presented, especially when eyewitness identification constitutes virtually the entire case against a defendant.[11] Indeed, the district court cited an extensive body of authority supporting the admission of expert testimony on this issue.[12]
The tension in the case law is in striking a balance between the adequacy of a juror's general knowledge and the need or helpfulness in a particular case for special knowledge or opinions. There is a significant body of authority in the scientific community that suggests a rule of exclusion rests on a faulty premise. A comprehensive treatment of this subject is contained in the treatise, Eyewitness Testimony: Civil and Criminal (3d ed. (1997)), by Elizabeth F. Loftus and James M. Doyle. One commentator has analyzed the issue by observing that the scientific evidence is simply at odds with the courts' reasoning in excluding this expert testimony:
The fundamental problem with these opinions is their premise that expert eyewitness testimony is within the common knowledge of the jury. Research indicates that the average juror actually knows little about factors affecting the accuracy of eyewitness identifications. As previously explained, the processes of perception and memory are complicated. While most people are satisfied in believing they have "common sense," the memory process involves factors that are often counterintuitive. For example, Dr. Elizabeth Loftus points to four commonly held misconceptions about the reliability of eyewitness identifications:
1. Witnesses remember the details of a violent crime better than those of a nonviolent one. Research shows just the opposite.
2. Witnesses are as likely to underestimate the duration of a crime as to overestimate it. In fact, witnesses almost invariably think a crime took longer than it did.
3. The more confident a witness is, the more accurate the testimony is likely to be. Research suggests that there may be little relationship between confidence and accuracy, especially when viewing conditions are poor.
4. Police officers make better witnesses than ordinary citizens. Research shows that the testimony of law enforcement personnel is generally not more accurate than that of an ordinary citizen.
Research by psychologists aimed at determining the level of knowledge about eyewitness testimony among potential jurors produced consistent results: the participants had only around a fifty percent accuracy rate when answering questions about human perception. For example, students in one study were given questionnaires. A typical question was: "Suppose that a man and a woman both witness two crimes. One crime involves violence while *378 the other is nonviolent. Which statement do you believe is true?" Only twenty percent of the participants accurately responded that both the man and the woman would remember the details of the nonviolent crime better than the violent crime; forty-nine percent believed the reverse.
Thus, the rationale that expert testimony is within the common knowledge of the jury is not only unfounded, but it casts doubt on the seriousness with which these courts have addressed the problems associated with eyewitness identifications.
Cindy J. O'Hagan, When Seeing Is Not Believing: The Case For Eyewitness Expert Testimony, 81 Geo. L.J. 741, 760-61 (1993) (footnotes omitted).

PEOPLE V. MCDONALD
Several state courts have reached the same conclusion. In the oft-cited case of People v. McDonald, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984), the accuracy of eyewitness identifications was at issue since no other evidence connected the defendant to the murder. The trial court refused to admit expert testimony on eyewitness identification. McDonald was subsequently convicted of the murder and sentenced to death. The California Supreme Court reversed McDonald's conviction, reasoning as follows:
When an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony.
Id., 208 Cal.Rptr. at 253-54, 690 P.2d at 727. The court held that the exclusion of the qualified expert's testimony "undercut the evidentiary basis of defendant's main line of defensehis attack on the accuracy of the eyewitness identificationsand deprived the jurors of information that could have assisted them in resolving that crucial issue." Id., 208 Cal.Rptr. at 253, 690 P.2d at 726.
In applying the California Evidence Code,[13] the court explained that "expert opinion may be admitted whenever it would `assist' the jury [and] will be excluded only when it would add nothing at all to the jury's common fund of information...." Id. at 247, 690 P.2d at 720. The court explained that the jury need not be wholly ignorant of the subject matter of the expert opinion in order to justify its admission. Id. In specifically rejecting the contention that the jurors' knowledge of the problems associated with eyewitness testimony precluded admission of an expert's testimony, the court observed:
It is doubtless true that from personal experience and intuition all jurors know that an eyewitness identification can be mistaken, and also know the more obvious factors that can affect its accuracy, such as lighting, distance, and duration. It appears from the professional literature, however, that other factors bearing on eyewitness identification may be known only to some jurors, or may be imperfectly understood by many, or may be contrary to the intuitive beliefs of most. For example, in the case at bar Dr. Shomer would have testified to the results of studies of relevant factors that appear to be either not widely known to laypersons or not fully appreciated by them, such as the effects on perception of an eyewitness's personal or cultural expectations or beliefs, the effects on memory of the witness's exposure to subsequent information or suggestions, and the effects on recall of bias or cues in identification procedures or methods of questioning.
Id. (citations omitted).[14] The court dismissed concerns that expert testimony on eyewitness *379 identification would usurp the jury's task of evaluating credibility, concluding that as with all expert testimony, the jury is fully capable of evaluating such expert testimony and could reject it completely after weighing the expert's opinion, reasons, qualifications, and credibility. Id. at 249, 690 P.2d at 722.
Other state courts have reached similar conclusions. See, e.g., Skamarocius v. State, 731 P.2d 63 (Alaska Ct.App.1987) (holding that judges clearly have authority to permit expert testimony on eyewitness reliability if the testimony is based on information not generally understood by lay people sitting on juries); State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983) (holding that the trial court abused its discretion in refusing to allow expert testimony on the reliability of identifications).

THIS CASE
It is important that we note the unique circumstances of this case which are elaborated in Judge Farmer's concurrence in the district court:
Here the principalindeed onlyevidence tying this defendant to the holdup of the store were the eyewitness identifications by the two owner-employees of the store, husband and wife, who were present during the holdup. One of the witnesses was outside the store sweeping when someone approached her from behind, showed her a gun and pushed her toward the store. The husband was inside the store attempting to catch a glimpse of his wife's assailant when he was shot. The assailant, of a different race than the witnesses, immediately fled. The entire incident consumed mere seconds.
Defendant was initially not among the police suspects. On the day after, the wife told police detectives that she had never seen her assailant before the incident. Nearly two months after the shooting, the witnesses' son called police detectives and reported that his parents had seen the assailant in their drive-through window earlier that day. Police arranged a photographic showup at the store. When the array of photos was laid before the witnesses, the wife told the husband that defendant was the one who had shot him. At trial the wife testified, in spite of her statement to the police after the incident, that she had recognized her assailant as an occasional customer of her store. Both witnesses identified defendant as the perpetrator. On the other hand, three alibi witnesses testified of defendant's whereabouts elsewhere. The defendant testified that he was not the person who accosted her and shot him.
660 So.2d at 344. The Fourth District in McMullen recognized these unique facts and the significant body of law and academic research supporting the admission of expert testimony on eyewitness identification under such circumstances, as well as our more recent decision interpreting section 90.702 in Angrand v. Key.[15] However, the court felt bound, as it should, by our holding in Johnson.
*380 Considering the unique facts of this case and their striking resemblance to the facts in McDonald, I agree with Judge Farmer that the circumstances here present a "plausible cause for a trial judge to conclude that the admission of the expert testimony proffered might be of assistance to the jury." Id. at 344. Further, I agree that, in combination, the weight of academic research and a significant body of well-reasoned case law should compel us to revisit our holding in Johnson that "a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." 438 So.2d at 777.
The primary test for the admission of expert testimony should be whether such evidence "will assist the trier of fact in understanding the evidence or in determining a fact in issue." Angrand, 657 So.2d at 1148. In accord with our reasoning in Angrand, the trial judge should consider the particular circumstances of the case being tried and the age, life experience, or other relevant information about the jurors in determining if the expert testimony meets the "helpfulness" standard of section 90.702, Florida Statutes (1997). The trial judge may also consider the circumstances surrounding an eyewitness's testimony, including the age of the eyewitness; the presence of a weapon or violence at the scene where the eyewitness allegedly saw the defendant; the stress the eyewitness was under when allegedly making the initial identification; and any other relevant circumstances affecting the eyewitness' testimony.
I agree with the observation in McDonald, 208 Cal.Rptr. 236, 690 P.2d at 720, that "other factors bearing on eyewitness identification may be known only to some jurors, or may be imperfectly understood by many, or may be contrary to the intuitive beliefs of most." As noted by the McDonald court:
For example, in the case at bar [the expert] would have testified to the results of studies of relevant factors that appear to be either not widely known to laypersons or not fully appreciated by them, such as the effects on perception of an eyewitness's personal or cultural expectations or beliefs, the effects on memory of the witness's exposure to subsequent information or suggestions, and the effects on recall of bias or cues in identification procedures or methods of questioning.
Id. Such expert testimony may be offered by psychologists who have conducted research on the psychological factors affecting eyewitness identifications, especially those dealing with perception, memory, and recall, or psychologists who have reviewed the findings and reports of such studies, and can offer testimony that will inform the jury of various psychological and sensory factors that can affect eyewitnesses. As in the McDonald case, McMullen's primary defense to the State's evidence against him, eyewitness identifications, was to challenge the identifications' accuracy. In both McDonald and this case, the defendant was of a different race than the eyewitnesses who identified him as the perpetrator; the defendant had several alibi witnesses who testified of his presence elsewhere; the entire criminal episode lasted a very short time, between a few seconds in McMullen to a few minutes in McDonald; and the eyewitness testimony was the only evidence that connected the defendant to the crimes and therefore lacked independent reliability. McDonald, 208 Cal. Rptr. 236, 690 P.2d at 711-16; McMullen, 660 So.2d at 344 (Farmer, J., concurring specially).
In this case I would approve of the discretionary use of expert testimony about psychological factors that may affect eyewitness identification for the same reason we approved expert testimony on grief and bereavement in Angrand: to give effect to the intent expressed in section 90.702. Further, as in Angrand, while the question of admissibility of such expert testimony should be left to the sound discretion of the trial judge, I would attach the same Angrand caveat that the trial judge must exercise his or her discretion in furtherance of section 90.702's "helpfulness" standard. In considering a proffer of such evidence the trial court should be aware that it has the discretion to admit the evidence. It should be careful in assessing the qualifications of the expert presented as well as in making an evaluation of *381 the helpfulness of the proffered testimony compared to the risk that it may cause juror confusion. None of that took place here. None of that took place here because of our holding in Johnson.
Accordingly, I would recede from Johnson to the extent that our holding there has been interpreted as a per se exclusion of expert testimony on eyewitness identifications. E.g., McMullen, 660 So.2d at 342 (Farmer, J., concurring specially) (casting Johnson as "a rather categorical holding that such evidence is inadmissible"). I would answer the certified question in the affirmative and, because it is apparent that Johnson was interpreted as a per se rule of exclusion by the trial court and the district court, I would remand this case to the district court for reconsideration under a true discretionary standard.
KOGAN, C.J., concurs.
NOTES
[1] The facts are taken from the Fourth District's opinion. McMullen, 660 So.2d at 341.
[2] See United States v. Kime, 99 F.3d 870 (8th Cir.1996), cert. denied, ___ U.S. ____, 117 S.Ct. 1015, 136 L.Ed.2d 892 (1997); United States v. Daniels, 64 F.3d 311 (7th Cir.1995), cert. denied, 516 U.S. 1063, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996); United States v. Brien, 59 F.3d 274 (1st Cir.1995); United States v. Rincon, 28 F.3d 921 (9th Cir.1994); United States v. Harris, 995 F.2d 532 (4th Cir.1993); United States v. Curry, 977 F.2d 1042 (7th Cir.1992); United States v. George, 975 F.2d 1431 (9th Cir.1992); United States v. Moore, 786 F.2d 1308 (5th Cir.1986); United States v. Brown, 540 F.2d 1048 (10th Cir.1976).
[3] See Ex parte Williams, 594 So.2d 1225 (Ala. 1992); State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983); Jones v. State, 314 Ark. 289, 862 S.W.2d 242 (1993); People v. Campbell, 847 P.2d 228 (Colo.Ct.App.1992); State v. Kemp, 199 Conn. 473, 507 A.2d 1387 (1986); State v. Gaines, 260 Kan. 752, 926 P.2d 641 (1996); People v. Enis, 139 Ill.2d 264, 151 Ill.Dec. 493, 564 N.E.2d 1155 (1990); Commonwealth v. Santoli, 424 Mass. 837, 680 N.E.2d 1116 (1997); White v. State, 112 Nev. 1261, 926 P.2d 291 (1996); People v. Mooney, 76 N.Y.2d 827, 560 N.Y.S.2d 115, 559 N.E.2d 1274 (1990); State v. Gardiner, 636 A.2d 710 (R.I.1994); State v. Whaley, 305 S.C. 138, 406 S.E.2d 369 (1991); State v. Percy, 156 Vt. 468, 595 A.2d 248 (1990); State v. Moon, 45 Wash.App. 692, 726 P.2d 1263 (1986); Engberg v. Meyer, 820 P.2d 70 (Wyo.1991).
[4] Recently, the Eleventh Circuit was asked to reevaluate this per se exclusion in United States v. Smith, 122 F.3d 1355 (11th Cir.1997), based on Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, it declined to do so, finding instead that, under the facts of Smith, the expert testimony regarding eyewitness reliability was inadmissible under Daubert.
[5] A comprehensive treatment of this subject is contained in the treatise Eyewitness Testimony: Civil and Criminal (3d ed. 1997), authored by Elizabeth F. Loftus and James M. Doyle.
[6] See Sally M.A. Lloyd-Bostock & Brian R. Clifford, Evaluating Witness Evidence: Recent Psychological Research and New Perspectives (1983); Nathan R. Sobel, Eyewitness Identification: Legal and Practical Problems (2d ed. 1981); Gary L. Wells & Elizabeth F. Loftus, Eyewitness Testimony: Psychological Perspectives (1984); Cathy M. Holt, Expert Testimony on Eyewitness Identification: Invading the Province of the Jury?, 26 Ariz. L.Rev. 399 (1984); Sheri Lynn Johnson, Cross-Racial Identification Errors in Criminal Cases, 69 Cornell L.Rev. 934 (1984); Cindy J. O'Hagan, When Seeing is Not Believing: The Case for Eyewitness Expert Testimony, 81 Geo. L.J. 741 (1993); Steven D. Penrod & Brian L. Cutler, Eyewitness Expert Testimony and Jury Decisionmaking, L. & Contemp.Probs., Autumn 1989, at 43.
[7] In Angrand, we commented on some of the factors to be used by trial courts in determining the admissibility of such testimony:

[P]sychiatrists, psychologists, or other qualified physicians who have treated a survivor or reviewed records concerning a survivor's treatment for physical or mental sequelae related to mental pain and suffering caused by the death of a survivor's decedent may provide testimony which will assist the jury in understanding evidence and deciding damages issues. Further, we recognize that the experience, age, and other relevant information about the jurors or the facts in a particular case could provide a basis for the trial judge to conclude that [the expert testimony] would assist the jury in understanding the evidence or in deciding the appropriate damages.
Id. at 1148-49.
[8] Prior to our decision in Johnson, at least one district court held that exclusion of expert testimony concerning reliability of eyewitness identification was proper. In Nelson v. State, 362 So.2d 1017 (Fla. 3d DCA 1978), the Third District held that testimony of a psychologist on matters of eyewitness identification was not admissible as expert testimony. The Third District reasoned that "it is within the common knowledge of the jury that a person being attacked and beaten undergoes stress that might cloud a subsequent identification of the assailant by the victim." Id. at 1021. Likewise, in Rodriguez v. State, 413 So.2d 1303, 1304 (Fla. 3d DCA 1982), the Third District ruled that "[t]he decision as to whether expert testimony should be allowed into evidence rests within the broad discretion of the trial court and will not be disturbed on appeal absent a clear showing of error." In holding that the expert testimony was inadmissible, the court determined that the factors affecting the eyewitness's reliability were within the ordinary experience of the jurors and did not require the testimony of an expert. Id. at 1305.
[9] Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(Emphasis added).
[10] Similarly, in United States v. Moore, 786 F.2d 1308 (5th Cir.1986), the Fifth Circuit stated that expert testimony regarding the accuracy of eyewitness identification is admissible and may properly be encouraged in a case where the sole testimony is casual eyewitness identification. Id. at 1313. Although the Fifth Circuit concluded that the trial judge in that case did not abuse his discretion in excluding the expert testimony, it did recognize a trend in decisions that "indicate a new willingness to uphold a trial judge's admission of such testimony and a willingness to evaluate the adequacy of reasons for justifying exclusion of such testimony in particular cases," and accepted "the modern conclusion that the admission of expert testimony regarding eyewitness identifications is proper." Id. at 1312.
[11] For a detailed analysis of the admissibility of an eyewitness identification expert, see United States v. Norwood, 939 F.Supp. 1132 (D.N.J. 1996).
[12] United States v. Downing, 753 F.2d 1224 (3d Cir.1985); Skamarocius v. State, 731 P.2d 63 (Alaska Ct.App.1987); State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983); People v. McDonald, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984); People v. Campbell, 847 P.2d 228 (Colo. Ct.App.1992); People v. Beckford, 141 Misc.2d 71, 532 N.Y.S.2d 462 (N.Y.Sup.Ct.1988); People v. Lewis, 137 Misc.2d 84, 520 N.Y.S.2d 125 (N.Y.Co.Ct.1987); State v. Whaley, 305 S.C. 138, 406 S.E.2d 369 (1991); State v. Moon, 45 Wash. App. 692, 726 P.2d 1263 (1986); Sally M.A. Lloyd-Bostock & Brian R. Clifford, Evaluating Witness Evidence: Recent Psychological Research and New Perspectives (1983); Nathan R. Sobel, Eyewitness Identification: Legal and Practical Problems (2d ed. 1983); Gary L. Wells & Elizabeth F. Loftus, Eyewitness Testimony: Psychological Perspectives (1984); Cathy M. Holt, Expert Testimony on Eyewitness Identification: Invading the Province of the Jury?, 26 Ariz.L.Rev. 399 (1984); Sheri Lynn Johnson, Cross-Racial Identification Errors in Criminal Cases, 69 Cornell L.Rev. 934 (1984); Kassin, et al, The "General Acceptance" of Psychological Research on Eyewitness Testimony, Am. Psychologist, Aug. 1989, at 1089; Cindy J. O'Hagan, When Seeing is Not Believing: The Case for Eyewitness Expert Testimony, 81 Geo.L.J. 741 (1993); Steven D. Penrod & Brian L. Cutler, Eyewitness Expert Testimony and Jury Decisionmaking, L. & Contemp.Probs., Autumn 1989, at 43.
[13] Section 801(a) of the California Evidence Code (West 1995) is similar to Florida's law and provides that an expert witness's opinion testimony is limited to such an opinion as is:

(a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact....
[14] Recent academic research on eyewitness identification suggests that police procedures used during lineups, especially photographic ones, may be major factors in mistaken identity. See John Gibeaut, Confidence Boost, 83 A.B.A.J. 26 (May 1997); see also Macias v. State, 673 So.2d 176, 180 n. 2 (Fla. 4th DCA 1996) (citing studies which conclude that "false identifications increase dramatically when the police lead the witness to believe the suspect is in the lineup").
[15] I especially note Judge Farmer's special concurrence in which he discussed the establishment of the scientific respectability of psychology and its use and effect on the law:

There is no denying ... that [expert psychological testimony] has worked its way into our rules of evidence in important ways. We admit it to tell us whether this parent or that is the appropriate one for custody of children. We admit it to determine whether one is sufficiently capable of standing trial on criminal charges and, equally, whether one can escape punishment for the crime on account of insanity. We admit it to assist the jury in determining the existence of sexual abuse. And we admit such evidence to determine whether to allow a person to refuse medical care without which the person will surely die. It strikes me that a generation ago the received wisdom in some of these areas held that jurors were fully capable of deciding such issues without the assistance of expert testimony from psychologists. But now too it is thought fair to ask whether a particular eyewitness identification is so colored by unappreciated human factors as to be inherently unreliable.
McMullen, 660 So.2d at 343 (Farmer, J., concurring specially). I would agree with Judge Farmer's view that since our Johnson decision was rendered in 1983, psychology as an academic discipline has evolved considerably and, indeed, the "state of the art today is considerably different." Id. at 342.